SHAW, P. J.
We have before us on a single record appeals in four cases which were tried together, and which all involve charges of violation of our statute regulating the practice of pharmacy. (Stats, of 1905, p. 535, secs. 1, 12, 13 and' 17, as amended by Stats, of 1933, p. 2192, sec. 16, as amended by Stats, of 1929, p. 239.) All of these cases arose since the amendments of 1933 became effective. The Pharmacy Act, in addition to the portions to be later specifically mentioned, contains provisions for the appointment of a State Board of Pharmacy, with power to regulate the practice of pharmacy, to examine and register as pharmacists and assistant pharmacists all applicants whom it shall deem qualified as such and to issue certificates of registration, which must be annually renewed, to those found qualified. The secretary of this board is required to keep a register in which the names, titles, qualifications and places of business of all registered persons shall be entered. The statute also prohibits the sale of drugs and medicines by unregistered persons.
In cases numbered 48313 and 48314 in the trial court the complaints contain altogether six counts charging that the defendants “being then and there the proprietors or owners of a certain pharmacy, store or shop (giving its location) where drugs and medicines are sold at retail and displayed for sale at retail did wilfully and unlawfully fail to place a registered pharmacist in charge of said store or shop.” The provision of the Pharmacy Act relating to this matter is contained in section 13, and reads as follows: “Any proprietor of a pharmacy, who shall fail, or neglect to place in charge of such pharmacy a registered pharmacist . . . shall be guilty of a misdemeanor”. Section 1 of the act *Supp. 764 defines a pharmacy as: “Every store or shop where drugs, medicines or chemicals are dispensed or sold at retail, or displayed for sale at retail, or where prescriptions are compounded, which has upon it or in it as a sign, the words ‘pharmacist’, ‘pharmaceutical chemist’, ‘apothecary’, ‘druggist’, ‘pharmacy’, ‘drug store’, ‘drugs’, or any of these words.”
The complaints above quoted do not directly allege that the defendants were proprietors of a pharmacy, by reason of the use of the disjunctive “or” in the phrase “pharmacy, store or shop”, nor is the matter descriptive of their store or shop sufficient to bring it within the statutory definition of a pharmacy. There is entirely lacking any allegation that the store or shop had upon it or in it any of the signs mentioned in the statute. The clause of the definition above quoted which is introduced by the words “which has upon it or in it” is obviously restrictive and its effect is that a store or a shop where drugs are sold at retail, etc., is not a pharmacy, for the purposes of the act, unless one of the signs mentioned is upon it or in it. These complaints are insufficient, and the proof is no better than the charge, for there is no evidence in regard to signs.
In cases numbered 48312 and 48315 there are three counts charging that the defendants, not being registered under the act, at various times sold “drugs and medicines, to wit: aspirin,” and three other counts in the same form charging sales of citrate of magnesia. Objection is made to these complaints because they do not negative certain exceptions contained in the act, particularly those in sections 12 and 16. Section 12 declares that “nothing in this act shall apply to” physicians supplying medicines to their patients, or to wholesale dealers’ business, or to proprietary medicines (with certain limitations), and section 16 provides that permits may be issued by the State Board of Pharmacy for the sale of “simple household remedies and drugs” therein listed, in rural districts, on certain conditions stated in the section, by persons not registered. These provisions are not descriptive of the offense but are mere exceptions and need not be negatived in a complaint. (Ex parte Hornef, 154 Cal. 355, 360 [97 Pac. 891]; People *Supp. 765 v. H. Jevne Co., 179 Cal. 621, 626 [178 Pac. 517]; People v. Ruddick, 107 Cal. App. (Supp.) 785, 792 [288 Pac. 45].)
In proof of these complaints a witness testified that the substances mentioned therein are drugs or medicines. This was permitted over defendant’s objection that the witness was not qualified to give such an opinion, and this ruling is assigned as error. We doubt the qualification of the witness, but the error, if any, was harmless, for the reason that the court could take judicial notice of the facts stated by the witness. Judicial notice extends to the meaning of the words and to all matters of science and common knowledge. (In re Berry, 147 Cal. 523 [82 Pac. 44, 109 Am. St. Rep. 160]; People v. Associated Oil Co., 211 Cal. 93, 105 [294 Pac. 717].)
The Pharmacy Act uses several forms of expression to describe the substances which are within its purview. The most general one is in that provision of section 1 prohibiting the sale of “any drug, poison, medicine, or chemical” by unregistered persons. The phrase “drugs, medicines or chemicals” is found three times; the expression “drugs, medicines and poisons” appears five times; the phrase “medicines or poisons” is used once; the word “drug” appears alone once; and the phrase “drugs and medicines” is used' twice. These different phrases are scattered through the act in a random fashion without any apparent plan or reason for different meanings in the different places where they are used, and we incline to the view that the same meaning was intended by all of them. No express definition of any of these words is set forth in the statute, consequently they are to be understood in their usual, natural and ordinary sense. The word “drug” is defined by Webster’s Dictionary as follows: “Any substance used as a medicine or in the composition of medicines for internal or external use,” and the same authority gives this meaning to medicine: “Any substance or preparation used in treating disease; a medicament; a remedial agent; a remedy; a physic”. Like definitions are given in other dictionaries, and in 19 Corpus Juris, 766 (Drug), and 40 Corpus Juris, 626 (Medicine). See, also, Town of Selma v. Brewer, 9 Cal. App. 70, 77 [98 Pac. 61], for a similar use of the word “drug”. Similar definitions of the word “drug” are found in Penal Code, section 383, *Supp. 766 and in Statutes of 1907, page 230, both of which relate to adulteration of drugs and are to some extent in pari materia with the Pharmacy Act. The two definitions last mentioned, however, are more comprehensive and probably could not be adopted here in their entirety.
Aspirin is a definite substance, known also as acetyl salicylic acid, and is much used for medicinal purposes. While we find in State v. Jewett Market Co., 209 Iowa, 567, 570 [228 N. W. 288, 289], a statement that aspirin was discovered in Germany, that its formula was secret and that it was originally made only by the possessor of this formula, the word has long since transcended all such limitations of meaning and is commonly used to denote the substance above mentioned, regardless of its manufacture. We find it so defined and the medical uses of the substance described in the following dictionaries and encyclopedias: Standard Dictionary (eds. 1914 and 1924); Shorter Oxford Dictionary (1933); Stedman’s Medical Dictionary (1914); Green’s Encyclopedia and Dictionary of Medicine and Surgery (1906); Encyclopedia Britannica (eds. 1911 and 1929); New International Encyclopedia (1924); Encyclopedia Americana (eds. 1920 and 1931), and Nelson’s Encyclopedia. This general agreement of the reference books on the subject is sufficient to show a ease where the court may take judicial notice of the facts stated, and warrants us in holding that aspirin is a drug or medicine. Such, also, was the holding in State v. Zotalis, 172 Minn. 132 [214 N. W. 766], and State v. Jewett Market Co., supra.
Citrate of magnesia also is within the statute. Its use as a purgative or cathartic is a matter of common knowledge which we find stated in several encyclopedias. It is also listed' in the United States Pharmacopeia. We have found no other use for it mentioned anywhere. It is clearly a drug or medicine.
It is further contended that the aspirin and citrate of magnesia sold were excepted from the operation of the Pharmacy Act by the following provisions of section 12: “Nor does this act apply to registered, trade-marked, or copyrighted proprietary medicine, registered in the United States Patent Office, but does apply to the sale by or through any mechanical device, of drugs, medicines and proprietary medicines registered or trade-marked in the *Supp. 767 United States Patent Office. Nor does this act apply to the sale of proprietary medicines, when manufactured under the supervision of a registered pharmacist in the State of California, for which trade-marks may have been filed with the Secretary of State of California, by merchants possessing a license issued by the Board of Pharmacy as described in section 16 of this act.” The last sentence of this quotation indicates that the words accompanying the term “proprietary medicine’'’ in the sentence first quoted were not intended to define that term but to impose additional limitations on the articles described by the exception. To bring an article within the exception stated by this first sentence, two things are necessary: (1) it must be a proprietary medicine, and (2) it must be “registered, trade-marked or copyrighted . . . registered in the United States Patent Office.”
We are not required to determine whether the articles in question were proprietary medicines because, even if we assume that they were, there is no showing that the other requirements of the exceptions above quoted were met. The burden of proving a case within the exception was on the defendants. In this behalf they offered in evidence certain letters, one from a patent lawyer in Washington and one from the makers of the citrate of magnesia in question, the contents of which are not stated in the record, but these letters were not received in evidence. The ground of their exclusion does not appear, but since they were plainly hearsay, such exclusion was proper.
By the judgments in cases numbered 48312 and 48315 two jail sentences of ten days each were imposed on one of the defendants, and two jail sentences of thirty days each were imposed on. the ■ other defendant. Section 669 of the Penal Code requires that in such a ease the judgment shall direct whether the sentences are to run concurrently or consecutively, but no provision in that respect was made in any of these judgments. This was an error, but since it does not affect the findings that the defendants were guilty, the convictions need not be disturbed. It has been frequently held in like cases that a reversal on such a ground does not require a new trial but merely that the case be sent back with directions to the trial court to proceed in the proper manner. (People v. Babdaty, 139 Cal. *Supp. 768 App. (Supp.) 791 [30 Pac. (2d) 634] ; People v. Jones, 87 Cal. App. 482, 499 [262 Pac. 361] ; People v. O’Brien, 122 Cal. App. 147, 158 [9 Pac. (2d) 902].)
We have considered other points made by appellants, but find no merit in them.
The judgments against the defendants Victoriana Garcia and Fernando Garcia, in the two cases which are numbered 48313 and 48314 in the municipal court, are reversed and said causes are remanded to the municipal court with directions to dismiss the said complaints; the judgments against Fernando Garcia on counts one and three, in ease numbered 48312 in the municipal court, and the judgments against Antonio Gonzales on counts two and three, in ease numbered 48315 in the municipal court, are revei’sed and said two causes are remanded to the municipal court with directions to arraign said defendants Fernando Garcia and Antonio Gonzales for judgment on said counts • respectively, and thereupon to render new and proper judgments against said defendants.
Bishop, J., and Fox, J., concurred.