[Civ. No. 13680.   First Dist., Div. One.   Apr. 15, 1948.]

WILLIAM J. DOWNING et al., Respondents, v. CALIFOR-
NIA STATE BOARD OF PHARMACY et al., Appel-
lants.

Fred N. Howser, Attorney General, J. Albert Hutchinson, Leo Englert, Deputy Attorneys General, Edmund G. Brown, District Attorney, John Rudden, Deputy District Attorney, John J. O'Toole, City Attorney, and C. Wesley Davis, Deputy City Attorney, for Appellants.

Leslie C. Gillen and John R. Golden for Respondents.

WARD, J.—This is an appeal from a preliminary injunction ordering the California State Board of Pharmacy, the State Board of Public Health, the Director of Public Health, the Board of Medical Examiners of the State of California, the Police Department of the City and County of San Francisco, the Municipal Court of the City and County of San Francisco and the District Attorney of the City and County of San Francisco, their agents, servants and employees and anyone "acting through their direction or control or with their knowledge or the direction or control or knowledge of any of them, be and hereby they are and each of them is, pending the trial of the above-entitled action and until the further order of this court, restrained and enjoined from arresting, prosecuting or directly or indirectly in any way molesting or interfering with plaintiffs above-named or any of them, or threatening so to do, for manufacturing, producing, preparing, compounding, packaging or supplying Downing Solution, described in the complaint on file herein, to licensed physicians and surgeons for the purpose of administering said solution to such persons suffering from diseases and pathological conditions, including cancer, and in such manner as said physicians and surgeons may select and determine, in order that said physicians and surgeons may conduct a series of controlled clinical tests to ascertain the efficacy and merits of said solution."

The complaint for injunction alleges that for a number of years William J. Downing has produced a new article known as "Downing Solution" and "has supplied such article in unbranded containers to duly licensed therapeutists"; that recently under the name of Desco Laboratory the article has been "produced and sold . . . in unbranded containers to duly licensed therapeutists" and that plaintiffs have enjoyed a "substantial business in the supply of such article." It is further alleged that the solution is administered to known and unknown persons suffering from certain diseases and pathological conditions and that such persons have been

relieved from pain and discomfort without harm to the person.

The complaint alleges that the State Board of Public Health caused the arrest of plaintiffs upon a. charge of conspiracy to violate the provisions of Health and Safety Code, sections 26280, 26286. ''The manufacture, production, preparation, compounding, packing, selling, offering for sale, advertising or keeping for sale within the State of California . . . of any drug or device which is adulterated or misbranded is prohibited.'' (Health & Saf. Code, § 26280.) Section 26286 provides ''The dissemination of any false advertisement of a drug or device is prohibited.'' Section 26295 of the same code provides the punishment for the commission of such offense.

The complaint alleges that the article ''is neither a drug nor a device within the meaning of said Health and Safety Code, nor has it been . . . adulterated or misbranded.'' Plaintiffs further allege that defendants are using the criminal law to take and injure plaintiffs' property, to wit: their business and ''to deprive . . . said persons suffering from said diseases and pathological conditions of a supply of such article to the greatly increased suffering of said afflicted persons.'' The prayer sets forth ''WHEREFORE, plaintiffs pray that this court restrain and enjoin defendants and each of them, their agents, servants and employees and anyone acting under their direction or control or with their knowledge or the direction or control or knowledge of any of them, from prosecuting plaintiffs upon said charges and from rearresting and/or prosecuting plaintiffs, or threatening so to do, for producing and/or supplying such article to duly licensed therapeutics, both permanently and during the pendency of this action, and that for such purposes this court issue its order to show cause to defendants and each of them requiring them to show cause at a time and place to be set by this court why a preliminary injunction should not issue as aforesaid, and for such further and other relief as may be just in the premises.'' The superior court issued the preliminary injunction as heretofore quoted.

It may be noted that in the complaint, and in many instances in the evidence, the word ''therapeutist'' is used. However, the preliminary injunction uses the term ''licensed physicians and surgeons.'' It may be assumed from the statements of the judge of the superior court that the preliminary injunction was intended only to protect plaintiffs

in the manufacture, production, preparation, compounding, supplying, giving away or selling of the solution to "licensed physicians and surgeons." All of the offers made by plaintiffs to have the court or courts appoint a panel of therapeutists or physicians and surgeons, licensed or otherwise, to test the efficacy of the solution may be disregarded. The results of the deliberation of such a panel would not add to or subtract from the legal right to use the "solution" or to determine its medicinal value. The procedure might be used as part of an advertising medium to gain the good will of the public. However, the courts and judges do not sanction nor would they participate in such a course of action.

There was considerable confusion when this petition was first called for hearing in the superior court as to whether certain parties had been served with process and regarding the status of others who evidently appeared voluntarily. The purpose of the attempted hearing was to restrain all of the parties from "proceeding on the criminal matter" until a hearing could be obtained on the injunction proceeding. Counsel for plaintiffs stated: "The only contention made for this article is that this article had proved—for a period of over 20 years has proved to be an article that has given alleviation from pain to certain pathological conditions including cancer." At a subsequent hearing it was stated that the motion to restrain the pending "criminal prosecution" was withdrawn, but that plaintiffs desired an injunction against further interference by the district attorney. Counsel for plaintiffs testified that the purpose of the petition was a test "under proper medical supervision, made at our expense with 50 patients . . . to determine whether or not this fluid alleviated pain in pathological cases, including cancer."

Plaintiff Downing filed an affidavit in support of the application for injunctive relief in which he averred: " 'That said solution is not a drug or medical preparation; that said solution does not sever or penetrate the tissues of human beings; that said solution is not a method in the treatment of disease, injuries, deformities, or other physical or mental conditions, but on the contrary, is a substance that alleviates pain caused by disease from physical conditions.' "

The term "drug" includes all medicines for internal or external use. (Pen. Code, § 383.) Irrespective of the language used in the preliminary injunction, that is, whether

it merely restrains plaintiffs from selling or giving away this unbranded solution to licensed physicians and surgeons, without designated number, to be selected by plaintiffs for an indefinite period of time and for the purpose of administering the solution to persons suffering from diseases, including cancer, or whether the preliminary injunction enjoins the law officers from interfering, arresting or prosecuting in the event the officers reach the conclusion that the sale or gratuitous presentation to persons is not with the purpose of conducting a series of controlled clinical tests, the question arises, is the "solution" a drug? ". . . articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of man or other animals" are within the scope of the term "drug." (Health & Saf. Code, § 26200.) The use of a substance determines its classification. If a substance is used for medicinal purposes, it is a drug. (*Town of Selma* v. *Brewer,* 9 Cal.App. 70 [98 P. 61].) " 'Any substance used as a medicine or in the composition of medicines for internal or medical use' " may be classified as a drug. (*People* v. *Garcia,* 1 Cal.App.2d Supp. 761, 765 [32 P.2d 445] ; see, also, *Stewart* v. *Robertson,* 45 Ariz. 143 [40 P.2d 979] ; *Goodwin* v. *United States,* 2 F.2d 200 ; 28 C.J.S. 496 ; 17 Am.Jur. 839.)

In determining the purpose of the manufacture, sale or giving away of the solution, the court is limited to the evidence introduced. Plaintiffs contend that it is not a drug. The evidence shows that a spectrographic analysis was made at one time of the percentage of solids contained in the solution, but the exhibit was introduced only for identification. The contents of "Downing Solution" is a mystery to the public and particularly the law enforcement officers. Eliminating the numerous statements of counsel for plaintiffs, the evidence introduced by them, in spite of the claim that the solution is not a drug preponderates that it is used for medicinal purposes. The complaint alleges that the article relieves pain and discomfort in "certain diseases." One affidavit on file sets forth that the solution cured "prostate gland" trouble. A second affidavit shows that a patient took the "solution" internally for cancer and "had less and less pain." The patient eventually died, presumably from pneumonia. A third patient was cured of dysentery. Another affidavit sets forth that a cancer patient is taking 75 drops a day and has improved in health, whereas another person suffering from can-

cer has improved on seven drops three times a day. Several physicians appeared as witnesses, one who had administered the drug internally or externally to patients. Counsel for plaintiffs admit that the solution is in effect a "substitute for narcotics." It is a drug when used for tests that plaintiffs desire.

▮ William J. Downing's affidavit sets forth "that said physicians and surgeons, upon the completion of said test to their professional satisfaction, report to the court whether or not in their opinion said solution has merit; that if said report be unfavorable to plaintiffs herein, they hereby undertake to dismiss this action, but that if said report be favorable, then defendants, their agents, servants and employees, be restrained and enjoined permanently from arresting, prosecuting or molesting plaintiffs or interfering with the producing and supplying of said solution." In a word, plaintiffs desire that if "their experts" report favorably, the state be enjoined from carrying out the mandate of a statute. Plaintiffs seek to use the judicial authority of the court, in the selection of three or more physicians by the court or by plaintiffs, to determine a question which the Legislature has provided rules of statutory provision to govern.

According to plaintiffs the drug has been manufactured, sold or given away and subsequently used for 20 years. However, it is not labeled except as "Downing Solution." A " 'New Drug' means (1) any drug the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety of drugs, as safe for use under the conditions prescribed, recommended, or suggested in the labeling thereof; or (2) any drug the composition of which is such that such drug, as a result of investigations to determine its safety for use under such conditions, has become recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions." (Health & Saf. Code, § 26211.) "*A drug or device shall be deemed to be misbranded* unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users." (Emphasis added.) (Health &

Saf. Code, § 26244.) Section 26288 of the same code provides the legal prerequisities before selling or giving away a "new drug." It must be shown that the federal act, section 505, is effective or, if not subject to such act, that compliance with the labeling provisions has occurred and that prior thereto there has been filed with the board an application setting forth "(a) Full reports of investigations which have been made to show whether or not such drug is safe for use; (b) A full list of the articles used as components of such drug; (c) A full statement of the composition of such drug; (d) A full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug; (e) Such samples of such drugs and of the articles used as components thereof as the board may require; and (f) Specimens of the labeling proposed to be used for such drug." (Health & Saf. Code, § 26288.) The complaint for injunction and the record submitted, evidentiary and otherwise, fail to show a compliance with the above provisions. The general rule is that an injunction should not be granted to prevent the execution of a public statute, by officers of the law, for the public benefit. (Civ. Code, § 3423, subd. 4.) The statute requires a drug to be labeled properly and prohibits the sale or giving away of a drug unless the statute has been complied with. ▇▇ The injunction here, in legal effect, permitted and authorized a limited violation of those statutes. The trial court has no power to permit even the limited violation of a criminal statute.

▇▇ Plaintiffs argue that the execution of a constitutional statute sought to be unconstitutionally applied may be prevented by injunction. It was so held in *Brock* v. *Superior Court*, 12 Cal.2d 605 [86 P.2d 805]. This court does not dispute the correctness of that rule. If law enforcement officers attempt to enforce a criminal statute arbitrarily and in a discriminatory manner, such action may be restrained by the courts. But that is not this case. ▇▇ It is further argued: "Respondents have been indicted for conspiring to commit certain misdemeanors, viz.: to adulterate, misbrand and falsely advertise a drug, and if the solution is not a drug an injunction is proper because a constitutional issue is tendered, viz.: whether in fact respondents' solution is a drug." The answer to that part of the argument is that plaintiffs waived the request for an injunction against the trial of the criminal proceeding. Plaintiffs state: "Thus, even if it can be said that the injunction prevents the execution of a public statute, still

the injunction is proper until such time as the trial Court, upon issues joined, determines that the solution is a drug.'' The preliminary injunction does not purport to restrain anyone from performing any act until it is determined by the superior court that ''Downing Solution'' is a ''drug.'' The purpose of the preliminary injunction according to its terms, is to hold ''tests to ascertain the efficacy and merits of said solution.'' It is true that Downing's affidavit denies that it is a drug, but the complaint, the accompanying affidavits, and the arguments submitted on appeal demonstrate that it is a ''drug'' that may be administered internally or externally as a substitute for narcotics.

The purported issues in the present case are entirely alien and extraneous to the issues raised in the Brock case, *supra*. At page 612 the court there stated: ''The allegations of the plaintiffs' complaint tender as an issue of fact the question whether the marketing of desert grapefruit is an agricultural trade or industry distinctly different from that of marketing other products, and, also, whether the producers of grapefruit are being discriminated against to the profit and advantage of the orange growers and their property taken without due process of law. The plaintiffs are entitled to the findings of a trial court upon those issues.'' At page 615, the court elaborated as follows: ''This principle is particularly applicable to the facts alleged by the complaint of the respondents which show that the Director of Agriculture asserts the right to say that only such amount of oranges and grapefruit may be shipped within the state as can be sold for a certain price, although the balance of the crop must spoil on the trees or be destroyed, no matter how great the need for food may be. Certainly such a novel exercise of power should be sustained only after a full showing of facts upon which a decision upholding it may be based.''

One of the objections raised by the defendant state authorities is the failure to comply with the law in labeling the ''solution.'' It is claimed that this is in violation of the law of the state. It appears that this product has been manufactured and sold or given away for approximately 20 years. Plaintiff Downing claims that he has a product which will assist in alleviating pain. In *Neslen* v. *Board of Health,* 70 Cal. App.2d 202, 206-207 [160 P.2d 862], the court used language which may be appropriate herein: ''If he has achieved an advance in medical science within the meaning of section

26273, and we would judge that he thinks he has, he should make application to the board for permission to advertise the truth about it. . . . If he should do so he would have to prove that his drug has a curative or therapeutic effect upon one or more of the enumerated diseases. It is to be presumed that the board would allow him to advertise what it determined to be the facts with reference to such curative or therapeutic effects.''

The order appealed from is reversed and the preliminary injunction is discharged.

Peters, P. J., and Bray, J., concurred.