[Civ. Nos. 14640, 14696. First Dist., Div. Two. July 30, 1951.]

THE PEOPLE, Respondent, v. DONALD GORDON,
Appellant.

714

Paul I. Myers for Appellant.

Edmund G. Brown, Attorney General, and Richard H. Perry, Deputy Attorney General, for Respondent.

NOURSE, P. J.—Defendant appeals in an action by the People to enjoin certain alleged violations of the Unfair Trade Practices Act (Bus. & Prof. Code, § 17000 et seq.) to wit, the selling of articles or products at less than cost in the manner prohibited in section 17043 of that code and the practice of using articles or products as "loss leaders" prohibited in section 17044. The court granted without notice to defendant a temporary restraining order dated February 15, 1950. Defendant's motion to dissolve said order was denied after hearing on February 20, 1950. On April 3, 1950, after further hearing an order was entered in the minutes reading:

"Cause herein, having been heretofore heard and submitted, the Court now makes its order granting a Preliminary injunction to enjoin the defendant from selling below invoice or replacement cost, whichever is lower, subject to the exceptions on 'below cost' sales as set forth in the Business & Professional Code, Section 17050."

On April 13, 1950, notice of appeal from said three orders

was filed, which appeal is numbered 14640. On May 25, 1950, the court filed a formal preliminary injunction, dated May 24th of wider extent than the minute order. Over and above selling below cost it enjoins offering for sale, distributing or offering to distribute, giving away or offering to give away or advertising with the intent to sell, distribute or give away and also engaging in the practice of using any article or product as a "loss leader." "Cost" and "loss leader" are defined in detail.

From this formal injunction defendant appealed separately on June 30, 1950, which appeal is numbered 14696. The two appeals were consolidated by order of the court.

The first question presented is whether the minute order of April 3, 1950 or the formal order of May 24th is the final and appealable decision. Appellant contends that, as the minute order contained no direction for the preparation of a written order and no findings were required, this order under rule 2(b) (2) of the Rules on Appeal finally disposed of the plaintiff's application and that the formal preliminary injunction is to be disregarded as a nullity, citing *Pessarra* v. *Pessarra*, 80 Cal.App.2d 965 [183 P.2d 279]. Such would certainly be the case if the court could validly dispose of the application for a preliminary injunction by the minute order. In *Eisenberg* v. *Superior Court*, 193 Cal. 575, 579 [226 P. 617], the Supreme Court citing from *Holtum* v. *Grief*, 144 Cal. 521, 525 [78 P. 11], said: " 'The decision of the trial court having been once made after regular submission of the motion its power is exhausted—it is *functus officio.*' " (See, also, *Holden* v. *California Emp. etc. Com.*, 101 Cal.App.2d 427, 430 [225 P.2d 634]; 14 Cal.Jur. 283.) Moreover the appeal taken from the minute order would at any rate have divested the trial court of further jurisdiction in the same matter (*Sacks* v. *Superior Court*, 31 Cal.2d 537, 540 [190 P.2d 602]). However the question remains whether the trial court could make its decision by a minute order or whether it could act only by making a formal written order. "The problem is one of trial court procedure, independent of the Rules on Appeal, since Rule 2, prescribing the time to file notice of appeal, does not come into operation until there is an appealable judgment or order." (*Gwinn* v. *Ryan*, 33 Cal.2d 436, 437 [202 P.2d 51].) In *Wheeler* v. *Superior Court*, 82 Cal.App. 202 [255 P. 275], where also there was a minute order and a written order for a temporary injunction it was held that the minute order, incomplete as to the terms, could not be the

basis of an injunction but that only the formal written order could have such effect, the court stating (p. 209) : ''It is true that in some instances orders may rest upon the clerk's minutes, but it is also true that others require some formulation by the judge. This is particularly so in the case of injunctions. An injunction should contain sufficient information on its face to apprise the party upon whom it is served of what he is restrained from doing. In ordinary actions at law it is the rule that the signature of· the judge is not necessary to the validity of the judgment, but it has been the almost invariable rule in this state for decrees in equity to be so signed. (Citation.) There are many judgments whose entry involves nothing more than clerical or ministerial duties, such as a judgment for the recovery of specific real or personal property, or a fixed amount of damages, or one which is rendered generally that the plaintiff is not entitled to recover from the defendant. In such cases the mere order for judgment is all that is needed for the clerk, but in many other actions, and especially those of an equitable nature, the form of the judgment and the character of relief that is to be granted, are as much a subject for the exercise of judicial power as is the determination of the party in whose favor judgment is to be rendered.'' The Wheeler case was cited by the Supreme Court in *Wutchumna Water Co.* v. *Superior Court*, 215 Cal. 734, 737 [12 P.2d 1033], where it was held that while it has been declared to be an almost invariable rule that decrees in equity are signed by the judge, where the judge is satisfied that relief upon an application for a preliminary injunction may be granted in the language of the prayer or motion there is no rule statutory or otherwise, which requires that he make and sign a decision in writing, and the entry of his order, announced orally in open court, in the clerk's minute book makes the decision a matter of record. ■ We conclude from those authorities that an order for a preliminary injunction can be validly made by minute order if said order by reference provides all required details of formulation but that otherwise a formal written order is essential. ■ Comparison of the minute order and the formal written order in this case shows that the minute order neither by reference nor otherwise contains detailed formulation of the acts prohibited. There is therefore here not present a situation in which the minute order can be considered a final and appealable disposition of the application for a preliminary injunction. ■ Rule 2(b)(2) of the Rules on Appeal cannot influence the conclu-

sion. Although, as pointed out in *Pessarra* v. *Pessarra, supra,* said rule was adopted to do away with the embarrassing old rule under which the question whether a minute order was final and appealable or not depended on the often unexpressed intention of the trial court, the rule remained that an appeal from a minute order does not lie if the proceeding was of such character that a formal order was required independent of the intention of the trial court. In *Hirschberg* v. *Oser,* 82 Cal. App.2d 282, 287 [186 P.2d 53], it was held that an order confirming a sale under section 785, Code of Civil Procedure, must contain matters such as a description of the property which never appear in a minute order, that it requires a detailed formal order, and that therefore rule 2(b)(2) has no application but rule 2(b)(3) relating to orders not to be entered in the minutes is the applicable rule so that the date of entry for the purpose of appeal is the date of filing of the order signed by the court. ▉ A similar reasoning and conclusion seem in general applicable to orders for a preliminary injunction. We hold that only the formal written preliminary injunction was the final and appealable decision of the court in this case.

Appellant attacks the injunction on the ground of unconstitutionality of the provisions of the Unfair Practices Act on which it is based. It is contended that the Unfair Practices Act violates the commerce clause of the federal Constitution because it necessarily establishes floors for prices of goods, affects the quantity of interstate shipments, and therefore constitutes a burden on interstate commerce. It is contended, but with insufficient reference to the record, that the commodities specified in the complaint as having been sold below cost had moved in interstate commerce. Even if we assume that the goods here involved had so moved the contention is without merit. To invalidate a state statute under the commerce clause more is required than such vague generalities. ▉ The Unfair Practices Act does not purport to regulate interstate commerce but was passed in the exercise of the state police power and was held by our Supreme Court to be a legitimate and reasonable exercise of that power. (See *Wholesale T. Dealers Bureau* v. *National Etc. Co.,* 11 Cal.2d 634, 643 [82 P.2d 3, 118 A.L.R. 486], where the purpose of the act is also analyzed.) In *United States* v. *Food & Grocery Bureau of Southern Calif.,* 43 F.Supp. 966, 972, it is said with respect to said act: "Certain it is that a State may within its boundary, regulate trade practices, so as to prevent unhealthy competition." In *Parker* v. *Brown,* 317 U.S. 341,

360 [63 S.Ct. 307, 87 L.Ed. 315], Chief Justice Stone said: "This Court has repeatedly held that the grant of power to Congress by the Commerce Clause did not wholly withdraw from the states the authority to regulate the commerce with respect to matters of local concern, on which Congress has not spoken. (Citations.) *A fortiori* there are many subjects and transactions of local concern not themselves interstate commerce or a part of its operations which are within the regulatory and taxing power of the states, so long as state action serves local ends and does not discriminate against the commerce, even though the exercise of these powers may materially affect it." ■ Undoubtedly our act serves local ends and does not discriminate against out of state commerce. *Parker* v. *Brown* upholds the constitutionality of the marketing program adopted for the 1940 raisin crop under the California Agricultural Prorate Act against attacks based on the commerce clause (and also on certain federal acts). The marketing program, as analyzed in that case, shows a so much more intensive interference with prices and an evidently so much stronger influence on the flow of commerce than can be attributed to the Unfair Practices Act that there can be no doubt that if such interference is not objectionable under the commerce clause the same must apply *a fortiori* to the Unfair Practices Act. ■ Moreover, "state laws will not be invalidated without the support of relevant factual material which will 'afford a sure basis' for an informed judgment." (*Southern Pac. Co.* v. *State of Arizona*, 325 U.S. 761, 770 [65 S.Ct. 1515, 89 L.Ed. 1915] and cases there cited.) In this case no facts whatever have been adduced which afford any basis for judging the manner in which the act affects interstate shipments or burdens interstate commerce. The contention that the commerce clause as such independent of further federal legislation invalidates the Unfair Practices Act must be rejected.

■ However, appellant further argues that the act conflicts with the policy of the Sherman Act, by which Congress is said to have asserted its power in the field. Recently the United States Supreme Court in *Schwegman Brothers* v. *Calvert Distillers Corp.*, 341 U.S. 384 [71 S.Ct. 745, 95 L.Ed. 1035, 19 A.L.R.2d 1119] held the nonsigner provision of a Fair Trade Act invalid with respect to goods in interstate commerce because they constituted minimum price fixing violating the Sherman Act and not permitted by the Miller Tydings Act.

■ However our Unfair Practices Act must be distinguished from the Fair Trade Act in that the former is not a price fix-

ing act. In *Wholesale T. Dealers Bureau* v. *National etc. Co.*, *supra*, 11 Cal.2d 634, at page 655 the Supreme Court said: "In its true sense it is not a price fixing statute at all. It merely fixes a level below which the producer or distributor may not sell with intent to injure a competitor. In all other respects price is the result of untrammelled discretion." Appellant contends that certain federal cases have held that activities of California grocers under our Unfair Practices Act constituted price fixing violating the Sherman Act. The cases do not so hold. In each case it was held that the grocers' organization in question was actually a conspiracy to fix prices and that defendants could not hide behind our Unfair Practices Act which was *not* a price fixing act. In *United States* v. *Food & Grocery Bureau of Southern Calif.*, 43 F. Supp. 966, 974, one of the cases cited by appellant, Yankwich, J. said at page 980: "The Unfair Practices Act of California contains nothing which, in itself, is a violation of the anti-trust statute . . . But when, under the guise of enforcing the Act, clear price fixing and price stabilization activities are carried on, the protestations of lawful motive lack force." On appeal from this case the Circuit Court (139 F.2d 973) stated that they agreed with the holding of the district court that the price fixing activities of appellants were not confined to effectuating the Unfair Practices Act and that therefore they were not required to determine whether enforcement of said act would violate the Sherman Act. However, they added that they agreed with the statement of our Supreme Court quoted above from the Wholesale Tobacco Dealers case, that our Unfair Practices Act was not a price fixing statute at all. Several cases with respect to Unfair Practices Acts of other states have also held that those statutes are not price fixing statutes. (See ann. 128 A.L.R. 1126, 1127-28.) There is then no conflict with the Sherman Act.

Appellant further argues that he would commit a violation of the Sherman Act if he should investigate the *legal* prices of his competitors, to find out which prices he may meet pursuant to section 17050(d), Business and Professions Code. The federal cases cited by appellant for this proposition do not hold anything of the kind. They hold that price fixing under the guise of interchanging price reports violates the Sherman Act. The rule in this respect is most clearly expressed by Chief Justice Taft in the latest case cited by appellant, *Sugar Institute* v. *United States*, 297 U.S. 553 [56 S.Ct. 629, 80 L.Ed. 859]: "Dissemination of information is normal-

ly an aid to commerce (p. 598) . . . A combination to gather and supply information as part of a plan to impose unwarrantable restrictions, as, for example, to curtail production and raise prices, has been condemned" (p. 600). It is there further said that the Sherman Act is general and adaptable and that in applying its broad prohibitions, each case demands a close scrutiny of its own facts. Under these principles there seems no danger whatever that appellant's scrutiny of the character of the prices of his competitors with relation to section 17050(d), Business and Professions Code, could be considered a violation of the Sherman Act.

Appellant's contention that the provision of section 17050 subdivision (d) violates due process because of the indefiniteness of the standard set, for which contention *Commonwealth* v. *Zasloff*, 338 Pa. 457 [13 A.2d 67, 128 A.L.R. 1120] is cited, has been expressly rejected by our Supreme Court in *People* v. *Pay Less Drug Store,* 25 Cal.2d 108, 117 [153 P.2d 9], where the difference between the California statute and the one under consideration in the Zasloff case is pointed out.

Finally appellant contends that both the Unfair Practices Act as such and the manner of its application to appellant in this case violate the "Equal Protection Clause" of the 14th Amendment of the United States Constitution.

The unconstitutionality of the act on that ground is argued without citation of any authority on the ground that large chain stores can purchase at lower price than individual grocers, who are prevented from competing with these larger concerns because they may not sell below their own higher costs. This reasoning was rejected with respect to the requirement of uniform operation of article I, section 11 of the California Constitution in *Wholesale Tobacco Dealers Bureau* v. *National etc. Co., supra,* 11 Cal.2d 634, 661, where it is said: "If there is any theoretical 'discrimination' resulting from the statute it is due to the very fact that the law is uniform in its operation, and does not classify." Moreover according to that decision the danger of unequal effect mentioned by appellant is remedied in the statute itself "by exempting from operation of the statute, any endeavor made in good faith to meet the legal price of competitors." The latter argument seems decisive also with respect to the equal protection clause of the 14th amendment, without necessity to investigate whether without such provision the statute would violate that clause.

The unconstitutional manner of application is predicated on the contention that appellant only was sued for violation of

the Unfair Practices Act in the whole area whereas competitors sold or offered to sell at the same prices. As authority appellant cites the well known case *Yick Wo* v. *Hopkins*, 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220]. It is accepted also in California cases that a statute valid on its face may be unconstitutionally applied (*Brock* v. *Superior Court*, 12 Cal.2d 605, 610 [86 P.2d 805]), and that discriminatory enforcement even of a criminal statute may be restrained (*Downing* v. *California State Board of Pharmacy*, 85 Cal.App.2d 30, 36 [192 P.2d 39]; *Wade* v. *City & County of San Francisco*, 82 Cal.App.2d 337, 339 [186 P.2d 181].) However in the latter case it was pointed out by this court that only deliberate or intentional discriminatory enforcement is a denial of the equal protection guaranteed by the Constitution, not mere laxity of enforcement. This rule does not apply only to enforcement of criminal statutes: the United States Supreme Court in *Sunday Lake Iron Co.* v. *Wakefield*, 247 U.S. 350 [38 S.Ct. 495, 62 L.Ed. 1154], a tax assessment case, said at pages 352-53: ''The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents . . . It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essental principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party.'' In our case the trial court was clearly of opinion that defendant had not proved such purposeful discrimination, for after stating that it is no defense that other persons in the area are also in violation of the act his memorandum decision continues ''Presumably the Attorney General, in the usual course of his duties, will require all merchants now in violation of the act to conform to its provisions or to show cause why they also should not be enjoined.'' There is nothing in the evidence which could justify the conclusion that because of the discriminatory character of the enforcement of the act the granting of the preliminary injunction was an abuse of discretion. Before the year 1950 there seems to have been no enforcement of the provision against selling below cost in the area involved. The evidence shows that in the middle of January, 1950, some 20 persons

were called to San Francisco and told by Mr. Reardon, Assistant Attorney General, that no selling below cost would be allowed, but that time would be given until February 1 to conform to the act. Some grocers complied but appellant continued advertising below cost after February 1. Alleged in the complaint are violations between February 9 and 15, 1950, and the complaint was filed February 15, 1950. Appellant may have happened to be the first grocer against whom action under the new enforcement plan was taken or the attorney general may have wished to try out one case first. There is no evidence of any circumstance which points to a purposeful discrimination.

Appellant's next major contention is that there is no substantial evidential support for the granting of a preliminary injunction. It is said that there was no substantial evidence that appellant acted "for the purpose of injuring competitors or destroying competition" as required by section 17043 and that there was no clear proof of injurious effect of his acts which according to section 17071 is presumptive evidence of said purpose, and further that the People had not proved that the competitor's prices which appellant showed that he was meeting were not legal prices of such competitors.

It was stipulated that defendant sold several groceries under his invoice or replacement cost. The verified complaint alleges "That said items of food and groceries and commodities were and now are being sold by said defendants in the ordinary course of business for the purpose of injuring competitors and destroying competition. That as a result of said sales, competitors of said defendants were injured, and are now being injured, and competition has been and is now being destroyed." Defendant denied this and stated in his affidavit that the sales have been made "in good faith to meet the *actual* prices of a competitor or competitors . . ." It would seem that the following language from *People* v. *Black's Food Store*, 16 Cal.2d 59, 61-62 [105 P.2d 361], also a case under the Unfair Practices Act is directly applicable: "The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion. (Citations.)

"In the present case the applications for temporary injunctions were heard on the verified complaints which specifi-

cally allege that the merchandise was sold below cost 'for the purpose of injuring competitors and destroying competition.' Representatives of the defendants testified that they did sell, offer for sale and advertise the goods in question 'at prices below their invoice or replacement cost,' but that they did so merely 'to increase the volume of our business,' and that they had no intention of thereby 'injuring competitors' nor did they 'intend to destroy competition.' The evidence in this case therefore created a mere conflict on the material issue regarding the intention with which the goods were sold below cost. A sound discretion was therefore conferred upon the trial court to grant or deny the preliminary injunctions. It does not appear that discretion was abused.''

In our case there was over and above the verified complaint an expert affidavit of Robert W. Hess, a competitor, to the effect that below cost sales and loss leaders are employed to divert trade from competitors to the actor and thereby injure competitors, that only larger merchants can take the loss on certain types of merchandise and make up from the increased sale on other items and that therefore the practice tends to eliminate small business from competition. Some oral evidence was to the same effect. The direct evidence of injury to competitors was not strong. One competitor (Maehl) testified that the practice had caused a reduction of $1\frac{1}{2}$ per cent in markup and a corresponding reduction in net profit mostly caused by defendant as one of the principal advertisers. Another competitor (Hergert) testified that he had lost customers to defendant Gordon. Hess, whose affidavit was mentioned above, testified that the advertised bargains caused his clients not to purchase such items in his store. Shopping lists picked up in his store showed that the customers bought Gordon's special items. The purchases of one steady customer decreased from around $150 to less than $50 a month. The witness Pieracci who had testified to the same effect as the affidavit of Hess retracted and testified that efficient small operators could withstand below price selling and that nobody in defendant's area went out of business. It cannot be said that it was an abuse of discretion to hold on the basis of such evidence for the purpose of granting a preliminary injunction that the required intent to injure competitors or destroy competition was present. Moreover, appellant has the burden of showing an abuse of discretion (*Remillard Brick Co.* v. *Dandini*, 47 Cal.App.2d 63 [117 P.2d 432]) and his contention that the preliminary injunction is not supported by substantial

evidence, without citation or analysis of the evidence adduced seems an insufficient showing. (Compare *Sutro Heights Land Co.* v. *Merced Irr. Dist.*, 211 Cal. 670, 787 [296 P. 1088]; *Metzenbaum* v. *Metzenbaum*, 96 Cal.App.2d 197, 199 [214 P.2d 603].)

With respect to the question whether appellant came under the exception of section 17050(d) permitting sales below cost made "In an endeavor made in good faith to meet the legal prices of a competitor selling the same article or product etc." it must be noted that appellant did not contend that he was meeting the *legal* prices of a competitor but that he was meeting the *actual* prices of competitors. This evidently intentional deviation from the statutory language indicates that appellant wholly disregarded the question of the legality of the low prices of his competitors and it negatives good faith in that respect. The prices of some of his competitors, which he allegedly was meeting, and who were called as witnesses by him, proved to be below cost, and no evidence was introduced showing that these prices came under an exception which caused them to be legal. The trial court could therefore correctly hold that appellant had not brought himself under the exception of section 17050(d).

Appellant contends that a positive showing by the People that the prices which he tried to meet were not legal is required, the burden of proof of the exclusion of the exception being on the plaintiff. As authority appellant cites 49 Corpus Juris 153, which however reads in part: "Where a party relies on a statute which contains an exception in the enacting clause, or clause creating and defining the right or liability asserted, such exception must be negatived in the initial pleading, but where the exception occurs in a proviso or in a subsequent section of the act, such exception is matter of defense and need not be negatived." As the exception here involved is separately stated in a later section, the quoted text shows that the exception is a matter of defense which need not be negatived or disproved by plaintiff. Accordingly *People* v. *Pay Less Drug Store, supra,* 25 Cal.2d 108, 114, states that if sales below cost with the requisite intent are shown defendants are required to go forward with such proof as would bring them within one of the exceptions. *Green* v. *Grimes-Stassforth S. Co.,* 39 Cal.App.2d 52 [102 P.2d 452], cited by appellant for the contrary position is a case of insufficient allegations of one of the requirements provided for in the section itself.

Although we find no error or abuse of discretion in the granting of a preliminary injunction appellant's conten-

tion that the injunction as formulated is wider than permitted by statute and Constitution and therefore in excess of the court's power, seems correct. Section 17078 Business and Professions Code authorizes the court to enjoin the violation of any section of the act of which a provision has been violated. The formal injunction in this case is intended to enjoin violation of section 17043 and 17044 of the code. However section 17043 prohibits selling at less than cost or giving away only if done ''for the purpose of injuring competitors or destroying competition.'' The injunction contains no such restriction. The importance of the restriction is emphasized by the fact that the Supreme Court in *Wholesale T. Dealers Bureau* v. *National etc. Co., supra,* 11 Cal.2d 634, 658 states that an absolute prohibition regardless of intent might well be unreasonable and therefore unconstitutional. ▆▆ Respondent's contention that all restrictions and exceptions provided for in the act should be considered incorporated by implication and that appellant cannot be prejudiced because insofar as an action covered by the injunction would not violate the act the injunction could not be enforced by contempt proceeding is without merit. ▆▆ Defendant must be able to determine from the injunction what he may and may not do. (*Gelfand* v. *O'Haver,* 33 Cal.2d 218, 222 [200 P.2d 790] ; *Morris* v. *George,* 57 Cal.App.2d 665, 677 [135 P.2d 195].) ▆▆ When the injunction is too broad restriction should not be left to a construction with the aid of the statute. We shall therefore modify the injunction so as to contain the required restriction.

▆▆ Appellant urges that also the appeal relating to the temporary restraining order and to the order denying the motion to dissolve it requires consideration. It has been held with respect to preliminary injunctions that they merge in the permanent injunction and that no appeal could be taken from the order granting the preliminary injunction after the permanent injunction had been granted. (*Sheward* v. *Citizens' Water Co.,* 90 Cal. 635, 638 [27 P. 439].) Such appeal will have to be dismissed, certainly when the permanent injunction is affirmed on appeal. (*Southern California Railway Co.* v. *Workman,* 146 Cal. 80, 86 [79 P. 586, 82 P. 79, 2 Ann.Cas. 583] ; *County of Tehama* v. *Sisson,* 152 Cal. 167, 179 [92 P. 64].) ▆▆ The same position is taken in *Knight* v. *Cohen,* 5 Cal.App. 296, 301 [90 P. 145] with respect to the situation actually present in this case, to wit, appeal from a temporary restraining order and order denying a motion to discharge it after a preliminary injunction has been granted.

The preliminary injunction dated May 24th, 1950, is modified by adding at the end of its subdivision 1 the words: "if such act is done for the purpose of injuring competitors or destroying competition."

As modified said preliminary injunction dated May 24, 1950, is affirmed, the appeals of all other orders appealed from are dismissed, each party to bear its own costs on the consolidated appeals.

The writ of supersedeas granted by the court on October 13, 1950, until the further order of this court, is dissolved.

Goodell, J., and Dooling, J., concurred.