(No. 33872.—

NATIONAL BRICK COMPANY, Appellee, *vs.* THE COUNTY OF LAKE *et al.*, Appellants.

*Opinion filed September 25, 1956.*

ROBERT C. NELSON, State's Attorney, of Waukegan, and THOMAS A. MATTHEWS, of Chicago, Counsel for the Village of Deerfield, for appellants.

DADY AND DADY, of Waukegan, (RALPH J. DADY, JR., of counsel,) for appellee.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

National Brick Company brought suit in the circuit court of Lake County to declare void a county zoning ordinance and to enjoin its enforcement as applied to plaintiff's property. The village of Deerfield and the town of West Deerfield were made defendants, as well as the county and its enforcement officials. After hearing evidence the court granted the relief prayed for. The village of Deerfield appeals.

Appellee is the owner of a 128-acre tract of land adjacent, on its east, north and south sides, to the village of Deerfield. The property was within the village limits until 1949, when it was disconnected therefrom on petition of appellee. It had been acquired for the purpose of manufacturing brick from the clay soil on the premises; and a brick-making factory has been operating there continuously since 1924. The tract is bounded on the east by railroad tracks and on the south by a highway, the center line of

which is the dividing line between Lake and Cook counties. The adjoining areas are predominantly industrial and commercial, containing a number of manufacturing plants, lumber yard, woodworking shops, and nurseries, as well as the Deerfield sewage treatment plant and the village garage. Some residences are also located in the neighborhood, principally to the west and north of appellee's property, although few are within ¼ mile therefrom.

The Lake County zoning ordinance in force in 1949, when the property was disconnected from the village, contained a map showing the use districts into which all unincorporated areas of the county were placed. Section 2C of the ordinance provided that "Any addition made to the area regulated by this Ordinance as shown on the zoning maps * * * shall be temporarily classified as in the R-1 district" until changed by amendment. The R-1 district is the highest classification in the ordinance, restricting use of the property to five-acre residential estates. No change in the classification of the area has been made, and no new map has been adopted to show the zoning of the present tract, although in 1952 the ordinance was amended in certain respects not material here.

To reverse the decree appellants contend first that since the land was voluntarily disconnected from the village at a time when the present provisions were in effect, it was the appellee rather than the county board which imposed the restriction on the property, and the former therefore cannot be heard to complain that the classification is arbitrary and invalid. No authority is cited for the position, nor are any reasons advanced to sustain it. There is no merit to the appellants' contention.

It is next urged that the ordinance was not shown to be unreasonable or confiscatory as applied to appellee's land. Three expert witnesses on behalf of plaintiff testified to the extent whereby the land would be diminished in value by the ordinance. Their opinions placed its value as high as

$4000 per acre for industrial purposes, and as low as $100 to $500 per acre if restricted to a minimum five-acre site residential use. A valuation engineer for the railroad testified that the brick-making plant and equipment could not be economically converted to other uses; that its present value is $791,000; and that its salvage value would be little or nothing, in view of the cost of removal. Three owners of property in the vicinity, as well as two members of the county board, testified that in their opinions the use of the tract for industrial purposes would not have a detrimental effect on neighboring properties. Extensive evidence was introduced showing that the north branch of the Chicago River, which forms part of the boundary of the present property and flows from north to south, is contaminated by sewage from the Deerfield treatment plant, the capacity of which is exceeded at times by the inflow from the combination sanitary waste and storm water pipe; and that at such times raw sewage is discharged into the ditch or stream, resulting in serious pollution and possible detriment to health if the area were developed for residential uses. It is pointed out that such overflows of raw sewage are not conducive to residential development.

On behalf of defendants, four expert witnesses testified that the property was adaptable to residential use, although in their opinion the strip within 300 feet of the railroad would be more valuable for industrial purposes. Of the defendants' expert witnesses only one testified that the best use was for the R-1 classification, with the five-acre limitation. The others could not recommend the five-acre restriction, although they testified that except for portions along the railroad tracks and the present sites of the clay hole and brick-making building, the property was suitable for residential use. In addition to the expert witnesses, nine residents of the general neighborhood testified that continued operation of the brick-making plant would be detrimental to the use and enjoyment of their homes.

While counties have statutory authority for the enactment of zoning ordinances, the power is not unlimited. The ordinance, to be valid, must have a substantial relation to public health, safety, morals, or general welfare. Where there is no material relation to the public good the county cannot, under the guise of a zoning regulation, either confiscate the property or inflict a substantial financial injury upon the owner. (*Midland Coal Corp. v. County of Knox,* 1 Ill.2d 200.) Whether the necessary relationship exists depends in each case upon the particular facts and circumstances. Among the factors to be considered are the character of the neighborhood, the use of nearby property, the extent to which property values are diminished by the restrictions, and the gain to the public compared with the hardship imposed upon the individual property owner. (*Hannifin Corp.* v. *City of Berwyn,* 1 Ill.2d 28; *Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91.) Zoning laws that result in relatively little gain or benefit to the public while inflicting serious injury or loss on the property owner cannot be sustained. *Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200.

In this case the location of the tract in close proximity to the railroad and other industrial and commercial enterprises is not disputed. According to the great weight of the evidence its value for residential purposes would be only a small fraction of its value for industrial use. In addition, the plaintiff's large investment in buildings and improvements, used for many years in its brick-making operations, would be wiped out. As against this extreme hardship defendants' evidence shows some expert opinion that if not restricted to five-acre minimum sites the highest and best use would be for residential purposes, and some conclusions of persons residing in the general area that the plant impairs the enjoyment of their homes. Regardless of the credibility of the witnesses—a matter primarily within the province of the chancellor (See *Pioneer Trust & Sav-*

*ings Bank* v. *Village of Oak Park,* 408 Ill. 458, 467)—we think this evidence clearly fails to show a benefit to the public sufficient to justify the serious loss inflicted upon the plaintiff. Even the defendants' witnesses, with one exception, admitted there would not be a ready market for home sites having the present minimum of five acres.

Appellants urge that even if the present classification is unreasonable or confiscatory as applied to the property, the five-acre requirement is separable and may be stricken without affecting the balance of the requirement. Invoking the rule that an invalid portion of a statute may be declared void without affecting remaining provisions complete in themselves, appellants insist that the classification be sustained as a residential one without the area requirement. The contention is without merit. A court cannot substitute its judgment for that of the county board and, in effect, make a zoning classification of its own. The factors or reasons which make appropriate a particular zoning restriction are matters for legislative policy. Courts can determine only whether the municipal body had authority to pass the ordinance and whether the ordinance as written bears a reasonable relation to the public health, safety, morals, or welfare. (See *2700 Irving Park Bldg. Corp.* v. *City of Chicago,* 395 Ill. 138, 147.) Where a zoning ordinance is improper, a court cannot change or modify the restrictions so as to uphold only a portion thereof. Its function is limited to declaring the ordinance void, the effect of which in this case is to leave the property unzoned. See *LaSalle National Bank* v. *City of Chicago,* 4 Ill.2d 253.

The zoning ordinance of Lake County, insofar as it applies to plaintiff's property, is arbitrary and unreasonable, and cannot be sustained. The decree of the circuit court is correct, and is accordingly affirmed.

*Decree affirmed.*