[Civ. No. 19830.   First Dist., Div. Two.   Dec. 19, 1961.]

TOWN OF ATHERTON, Plaintiff and Respondent, v. KENNETH S. TEMPLETON, JR., et al., Defendants and Appellants.

John D. Jorgenson for Defendants and Appellants.

W. C. Black for Plaintiff and Respondent.

SHOEMAKER, J.—Defendants prosecute this appeal from a judgment perpetually enjoining them from using or maintaining the sides and backstops of a tennis court located in their front yard and further ordering them to remove this structure from their premises. The trial court based its judgment on the finding that a certain duly enacted zoning ordinance of plaintiff Town of Atherton prohibited the construction or erection of any accessory structure in the front yard of a residence. The ordinance in question, Ordinance No. 146, is entitled "Zoning Regulations" and purports to regulate and restrict the use of property in the Town of Atherton. Section 11-3 of said zoning regulations provides that all accessory structures must be located to the rear of the rear

line of the residential dwelling and cannot be located in the front yard area. Section 22-12 defines a structure as "Anything constructed or erected, including pools and housing for incidental equipment thereto, the use of which requires location on the ground or attached to something having location on the ground." Section 22-2 defines an accessory structure as "A supplemental structure, . . . including pools and the housing for incidental equipment thereto, the use of which is purely incidental to that of the main residential building."

The trial court found that defendants were cognizant of the ordinance and the fact that the municipality contended that under said ordinance a tennis court constituted an accessory structure, and had filed with plaintiff's city clerk an application for a variance permitting them to erect a tennis court in their front yard, and that upon the denial of their application defendants had constructed the tennis court in willful disregard of the ruling.

Appellants' main attack is directed to the constitutionality of the ordinance. ▊ Before launching into a discussion of the constitutional question, however, appellants contend that their tennis court's sides and backstop are as a matter of fact and law a fence, and they do not constitute a "structure" within the meaning of the Atherton ordinance. Appellants' argument appears to be based on the premise that a literal interpretation of the ordinance would lead to an unconstitutional result and that the ordinance should therefore be interpreted in a narrow manner in order that its validity may be upheld. Such an argument is difficult to follow since it presupposes that a municipal ordinance broad enough to prohibit a tennis court would be unconstitutional. In any event, a legislative enactment clearly cannot be interpreted in such a manner as to ignore the plain meaning of its language. Appellants themselves admit that a reading of the ordinance indicates that its authors intended to give it the broadest possible construction. Since a structure is defined as "Anything constructed or erected . . . the use of which requires location on the ground or attached to something having location on the ground," it is difficult to see how the ordinance could be interpreted in such a manner as to exclude the sides and backstops of a tennis court. Although appellants are correct in contending that an ordinance should be interpreted in a manner which will leave its provisions constitutional and operative, the courts are clearly not entitled to ignore the express language of a legislative enactment. ▊ The proper rule is set forth

150

in *Warner* v. *Kenny* (1946) 27 Cal.2d 627, 629 [165 P.2d 889], where the court stated: "The interpretation adopted must be reasonable, and where the language is fairly susceptible of two constructions, one which, in application, will render it reasonable, fair, and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted."

We do not believe that the plain language of the Atherton ordinance is susceptible of any reasonable interpretation which would exclude the sides and backstops of a tennis court from the definition of a "structure." In *County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683, 689 [234 P.2d 972], the court had before it an ordinance defining "structure" in an almost identical manner ("'anything constructed or erected and use of which requires more or less permanent location on the ground or attachment to something having a permanent location on the ground'"). The ordinance went on to define "building" as "'a structure having a roof supported by columns or walls.'" The court pointed out that a "building" had been held to include a water tank, a dugout or artificial cave, a silo, and an iron fence. The court therefore concluded that there could be no doubt that defendants' gasoline storage tanks were "buildings" within the meaning of the ordinance. In the instant case, it appears equally clear that the sides of appellants' tennis court constituted a structure within the meaning of the Atherton ordinance.

Appellants argue that the Atherton zoning ordinance is unconstitutional both in its general application and as applied to appellants and their property. In attacking the constitutionality of the ordinance as a whole, appellants assert that all zoning ordinances must find their justification in some aspect of the police power, asserted for the public welfare. Appellants concede that comprehensive zoning schemes such as that set forth by the Atherton regulations have been upheld by the courts where reasonably related to some aspect of the public welfare. It is appellants' position, however, that the prohibition of all accessory structures from the front yards of private residences would in no way serve to promote the public health, safety, morals, or general welfare.

The burden to be borne by one attacking the validity of an ordinance is an extremely heavy one. The rule is well established that the courts will not reverse a legislative determination merely because its wisdom or propriety may be

debatable. (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479], dismissed, 273 U.S. 781 [47 S.Ct. 460, 71 L.Ed. 889].) ▮ It has also been stated that every intendment will be indulged in favor of the validity of a zoning ordinance. (*Zahn* v. *Board of Public Works* (1925) 195 Cal. 497, 514 [234 P. 388], affd., 274 U.S. 325 [47 S.Ct. 594, 71 L.Ed. 1074].) ▮ The burden of proof has been imposed on one contesting the validity of a zoning ordinance, even as to its application to particular property, and the California courts have gone as far as to state that the plaintiff must produce sufficient evidence to support the court's concluding as a matter of law that the ordinance is unreasonable and invalid. (*Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 338 [175 P.2d 542].) ▮ It has been stated that "the decision of the zoning authorities as to matters of opinion and policy will not be set aside or disregarded by the courts unless the regulations have no reasonable relation to the public welfare or unless the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power." (*Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990].)

▮ In *Gorieb* v. *Fox* (1927) 274 U.S. 603 [47 S.Ct. 675, 71 L.Ed. 1228, 53 A.L.R. 1210], the court had before it a setback ordinance requiring that all buildings be constructed behind an established building line of 42 feet. The court, in upholding the validity of the ordinance, stated, at pages 608-609: "It is hard to see any controlling difference between regulations which require the lot-owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street. Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property. All rest for their justification upon the same reasons which have arisen in recent times as a result of a great increase and concentration of population in urban communities and the vast changes in the extent and complexity of the problems of modern city life. . . . The members of the city council, as a basis for the ordinance, set forth in their answer that front-yards afford room for lawns and trees, keep the dwellings farther from the dust, noise and fumes of the street, add to the attractiveness and comfort of a residential district, create a better home environment, and, by securing a greater

distance between houses on opposite sides of the street, reduce the fire hazard; that the projection of a building beyond the front line of the adjacent dwellings cuts off light and air from them, and, by interfering with the view of street corners, constitutes a danger in the operation of automobiles. We cannot deny the existence of these grounds—indeed, they seem obvious.''

In *Thille* v. *Board of Public Works* (1927) 82 Cal.App. 187 [255 P. 294], the plaintiff sought a writ of mandate to compel the issuance of a permit to construct a garage on the front portion of his property. Plaintiff had been denied a permit by the city authorities on the ground that a Los Angeles setback ordinance prohibited the construction of any building or structure within 30 feet of the street. The trial court granted plaintiff a writ of mandate, but the judgment was subsequently reversed on appeal, with the court pointing out that the prohibition of plaintiff's garage might aid in fire prevention and lessen the danger of street accidents.

The ordinance in the case at bar is clearly part of a comprehensive scheme designed to further the identical purposes set forth in the *Gorieb* and *Thille* cases. The Atherton zoning ordinance, in addition to requiring that residential dwellings be set back 60 feet from the front property line (§ 7-5, relating to Residential ''A'' districts), also prohibits the construction of ''accessory structures'' in front yard areas. Section 1-1 of the ordinance states that the zoning regulations ''are deemed necessary in order to encourage the most appropriate use of land; to conserve and stabilize the value of property; to provide adequate open spaces for light and air, and to prevent and fight fires; . . . and to promote health, safety, and the general welfare, all in accordance with a comprehensive plan.'' It would seem obvious that the elimination of accessory structures from front yard areas would also afford room for lawns and trees, add to the attractiveness and comfort of a residential district, and aid in traffic safety by affording a better view of street corners. Indeed, it would seem that a setback ordinance applicable only to residential dwellings would be of little real efficacy if property owners were freely permitted to construct various accessory structures in the area between their residences and the street. It is our opinion that the Atherton ordinance must be upheld as a valid exercise of the police power.

Appellants assert, however, that even if the ordinance as a whole can be viewed as constitutional, the application of

the ordinance to their particular property bears no reasonable relation to even the most broadened concept of the police power. Respondent city contends that such an attack may be made only upon the validity of the ordinance as a whole. If the ordinance is, in its overall purpose and design, a reasonable exercise of the police power, respondent urges that it can make no difference that a particular application of the ordinance results in no benefit to the public. Respondent's position is well taken. In *Acker* v. *Baldwin* (1941) 18 Cal.2d 341 [115 P.2d 455], the trial court had found a Los Angeles County zoning ordinance to be unconstitutional and had enjoined the county from enforcing it. The decision of the trial court rested in part on a finding that the application of the ordinance to plaintiff's particular property would result in no benefit to the general welfare. On appeal, the judgment of the lower court was reversed, with the court stating, at page 346: ". . . the court's finding that the use of property by the respondent and others for business purposes, has, in nowise, reasonably or otherwise impaired or injuriously affected the public health, safety, morals, or general welfare will not sustain the judgment. Courts do not require that the proscribed use of each individual lot in an area zoned will have this effect if the zoning plan, as a whole, promotes these objectives of the police power." (See also *Price* v. *Schwafel* (1949) 92 Cal. App.2d 77, 80 [206 P.2d 683].) Since such is the law, it can make no difference whether appellants are correct in contending that the removal of their tennis court would result in no benefit to the general welfare. We would add, however, that the location of a large structure such as a tennis court in the front yard of a residence might easily increase the danger of automobile collisions by interfering with the view of street corners.

Appellants' next contention is that they should have been granted a variance because the peculiar shape and topography of their property make it impossible for them to construct a tennis court in any other location. Appellants argue that the ordinance, even if properly applicable to a tennis court, should not have been enforced as to them, since to do so would cause undue hardship. It is well recognized that a zoning ordinance of this nature must of necessity interfere to some extent with an owner's general right of dominion over his property. The fact that some hardship or even financial loss may result to a particular property owner does not entitle him to be exempted from its provisions.

(*Paramount Rock Co.* v. *County of San Diego* (1960) 180 Cal.App.2d 217, 233 [4 Cal.Rptr. 317].) In the case at bar, section 12-2 of the Atherton zoning ordinance specifically provides that no variance shall be granted, with the exception of pools, as to any structure which would encroach into the front yard area. Although the Atherton ordinance thus authorizes no variance from the prohibition against structures in front yard areas, appellants' application for a variance was duly considered by the planning commission. In denying appellants' application, this body did not base its decision solely on the fact that no variance was authorized under the ordinance. The commission further found that the tennis court could be located in a proper area without any undue hardship to appellants. An examination of the record reveals that appellants possessed a much larger parcel of land at the time that they applied for a variance. Appellants evidently chose to dispose of their additional property and construct their tennis court in an area specifically prohibited by the Atherton ordinance. The rule is well established that self-induced hardship affords no grounds for attack on an enactment or regulation. (55 Cal.Jur.2d, § 77, pp. 669-670.)

In *Wilkins* v. *City of San Bernardino, supra,* at page 342, the court stated: "The constitutionality of the ordinance or of its application to particular property must be determined upon the basis of the facts and conditions as they existed prior to the time plaintiff proceeded in disregard of the ordinance, and the court must wholly ignore all conditions which resulted from the plaintiff's actions. If this were not so, then any landowner could violate a zoning ordinance with impunity, secure in the knowledge that, by just going far enough, by devoting his land to unrestricted uses, and by creating a situation in which enforcement would result in hardship to him, he could obtain a judgment that the ordinance is unconstitutional as applied to the *then existing* circumstances as changed by his actions. While a plaintiff may ignore an unconstitutional ordinance, this does not, and cannot, mean that a person may proceed contrary to an ordinance and then claim that it is unconstitutional because of the results and effects *of his own actions* in disregard of the ordinance." Since the facts in the instant case clearly reveal that any hardship suffered by appellants is the result of their own actions in deliberately disposing of land on which the tennis court could properly have been built, there can be no question that the planning commission acted properly in denying them a variance.

Appellants' final contention is that the Atherton ordinance was applied in such a discriminatory manner as to deny them equal protection of the law. In support of their position, appellants rely on *Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], where the court held that a municipal ordinance designed to regulate the carrying on of public laundries could not validly be applied in such a manner as to discriminate purely on a racial basis between persons otherwise qualified. Appellants contend that the Yick Wo holding is controlling in the instant case because appellants, during the course of the trial, offered to prove that the Atherton authorities had failed to enforce the ordinance against certain designated front yard structures such as badminton courts, basketball backstops, fences, tree houses, flag poles, aerials, lamp posts, bird baths, statuary, and other tennis courts. In *Wade* v. *City & County of San Francisco* (1947) 82 Cal.App.2d 337, 338-339 [186 P.2d 181], the court made reference to the *Yick Wo* decision and pointed out that there is a vast difference between the application of an ordinance in an intentionally discriminatory manner and mere laxity of enforcement. The court stated, at page 339: ". . . it is held that while mere laxity of enforcement, although it may result in the unequal application of the law to those who are entitled to be treated alike, is not a denial of equal protection in the constitutional sense, it is otherwise in the case of deliberate or intentional discriminatory enforcement which is a denial of the equal protection guaranteed by the Constitution." The mere failure to enforce the Atherton ordinance against certain other structures within the front yard areas does not entitle appellants to violate the ordinance. " 'The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society . . .' " (*People* v. *Sipper* (1943) 61 Cal.App.2d Supp. 844, 848 [142 P.2d 960].) Appellants did not establish that the Atherton ordinance has intentionally been applied to them in a discriminatory manner.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied January 18, 1962, and appellants' petition for a hearing by the Supreme Court was denied February 14, 1962. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.