[S. F. No. 20667. In Bank. June 13, 1963.]

MARGARET E. HAMER, Plaintiff and Respondent, v.
TOWN OF ROSS, Defendant and Appellant.

Robert W. Elliott, City Attorney, Sturgis, Den-Dulk, Douglass & Anderson and Robert T. Anderson for Defendant and Appellant.

Kennedy, Bloom & Fletcher, Leonard J. Bloom and James M. Fletcher for Plaintiff and Respondent.

TOBRINER, J.—While zoning ordinances which impose a one-acre lot restriction cannot properly apply to property which is virtually surrounded by parcels of lesser size, they may, conversely, restrict the use of the property to a single-family dwelling because that usage is the predominant characteristic of the property in the general area. Applying the accepted test that we will uphold such a regulation if its reasonableness is fairly debatable, we sustain the single-family restriction. We further hold that the ordinances may severably be enforced as to the single-family restriction although not as to the one-acre requirement. We proceed to set forth our reasons for these conclusions.

The case involves an appeal by the Town of Ross from a judgment declaring void the application of its zoning ordinances in imposing upon plaintiff's property a restriction to a single-family dwelling upon a one-acre lot and in ordering the issuance of a building permit for the construction of multiple dwelling garden apartments on the property.

The essential physical facts are undisputed. Plaintiff owns an irregularly shaped 2.2-acre parcel of land in Ross which she purchased in 1938. The eastern boundary of plaintiff's property fronts one of the main arterial highways of Marin County, Sir Francis Drake Boulevard, a two-lane thoroughfare which runs north and south. The southern half of plaintiff's frontage faces the parking lot and utility service area of Ross General Hospital, which has been constructed on the other side of Sir Francis Drake Boulevard. The main portion of the hospital had been completed before plaintiff's purchase of her property; subsequently the hospital added the parking area and utility service facility.

Immediately to the north of the hospital, and on the other side of the highway from plaintiff's property, there stands a two-family dwelling. North of this dwelling a series of single-family homes has been built upon lots substantially smaller than one acre; the majority of these lots contain approximately 10,000 to 20,000 square feet. Several of these single-

family homes face the plaintiff's property across the boulevard; the others are further to the north.

On the same side of the boulevard as plaintiff's property a remodeled structure, which the trial court found "appears to be designed for duplex use," lies to the immediate north. Beyond this structure several one-family residences occupy lots which are approximately 10,000 to 15,000 square feet, similar to those on the opposite side of the boulevard.

An abandoned railroad right-of-way, which is an unimproved and unused strip of land approximately 60 feet in width, marks the rear or westerly boundary of plaintiff's property. Beyond the right-of-way lie the backyards of an older residential district, consisting of small single-family dwellings on 7,500 square foot lots. To the north of this residential district and also across the right-of-way rises the rear elevation of the Ross business district. This district includes a nonconforming apartment building which is approximately 250 feet from the northwest corner of plaintiff's property.

The boundary between Ross and the unincorporated community of Kentfield constitutes the southern border of plaintiff's property. Immediately adjoining her Ross property plaintiff owns real estate in Kentfield, upon which she has erected an apartment building. The land in Kentfield along Sir Francis Drake Boulevard has been zoned by the County of Marin for multiple-family use.

The Corte Madera Creek traverses plaintiff's property. The creek bed is within a few feet of the boulevard at the northern end of plaintiff's frontage and approximately 150 feet from the boulevard at the southern boundary. The creek is subject to periodic flooding, and its banks suffer from erosion; for the purpose of combatting such erosion plaintiff has spent several thousand dollars. To render the property suitable for the erection of dwellings the trial court found that plaintiff would be compelled to spend $12,500 for flood control devices and approximately $30,000 for site improvement. Plaintiff has also constructed a wooden bridge across the creek to provide access to the main portion of her property, which lies to the west of the creek. In 1951 plaintiff built a home for herself on the southeast portion of her Ross property; she has resided there continuously ever since.

When plaintiff purchased her property in 1938 it was zoned for single-family residential use but unrestricted as to lot size. In 1946 the Town of Ross enacted its present zoning

scheme, dividing the town into three districts: commercial, community cultural, and residential. Nearly 99 per cent of the town's total area is within the residential district. The small commercial zone lies across the abandoned railroad right-of-way at the rear of plaintiff's property. To accommodate the Marin Art and Garden Center the town established the community cultural zone, which lies to the north of plaintiff's property and on the other side of Sir Francis Drake Boulevard.

The 1946 ordinance preserved the restriction to single-family dwellings upon property in the residential district, but added a provision to establish seven zones, with a minimum lot size specified for each zone. These lot sizes range from a minimum of 5,000 square feet through one acre. In 1951 the town adopted a municipal code and codified these zoning regulations. Section 10 105 contains the single-family dwelling use provision applicable to the residential district. Section 10 120 provides for the above-mentioned seven zones in the residential district; section 10 121 fixes the minimum lot size for each of the subzones. Section 10 128 establishes the procedure by which the town council may grant variances, exceptions or adjustments. The code, however, makes no provision for the elimination of nonconforming uses. The municipal code contains a provision that if any section or subsection is held to be invalid or unconstitutional, the validity of the remaining portions shall not be affected thereby.

Plaintiff's property is situated in residential class F, which fixes the minimum lot-size requirement at one acre. The land to the north of plaintiff's property on both sides of the boulevard is also zoned residential class F, but, as we have noted, the preponderant number of these lots contain approximately 10,000 to 20,000 square feet. The record does not disclose whether these lots were subdivided and the homes built on the property before the imposition of the minimum lot-size restriction, or, despite the zoning ordinances, built after such regulation. Nor does the record disclose whether these homes were permitted as variances. In any event, nothing in the record suggests that these improved 10,000 to 20,000 square foot lots do not comprise a relatively permanent part of the Ross landscape. With the few exceptions heretofore noted, the Town of Ross contains no multiple dwellings.

In 1949 plaintiff applied to the town council for a variance to permit the use of her property for multiple-residential

purposes. The council denied her application. In 1957 plaintiff filed a petition with the council for an amendment to the zoning ordinances to establish a classification for multiple garden apartments and to include her property in it. The council likewise denied this petition. In 1958 plaintiff again filed an application for a variance from the zoning ordinances to permit construction of garden apartments upon her property; when the council denied her application she brought the instant action.

In the present action plaintiff asked that the one-acre zoning limitation be declared invalid and that the court issue an order of mandamus compelling the Town of Ross to grant a building permit which would allow the construction of garden apartments upon her property. The court, having rendered findings,[1] entered its judgment declaring that the provisions of the zoning ordinances were void as applied to plaintiff's property, and ordering the Town of Ross to issue building permits for the erection of the proposed garden apartments. The Town of Ross appeals from that judgment.

 As to the one-acre limitation, we believe that, due to the location of the property in an area of smaller parcels, as well as to other considerations, the requirement is unreasonable, oppressive and unwarranted. As Chief Justice Gibson stated in *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990], "The courts will, of course, inquire as to whether the scheme of classification and districting is arbitrary or unreasonable, but the decision

---

[1]The court found among other matters that "the present zoning classification of plaintiff's property is not necessary to, and does not promote, the public health, safety or general welfare, and bears no reasonable reference thereto. The multiple residential use of plaintiff's property as proposed by plaintiff, would in no way be detrimental to the public health, safety or general welfare. Said use of plaintiff's property would not appreciably affect traffic conditions nor would it create undue congestion in the neighborhood. Such use would not depreciate the value of any contiguous or surrounding property or property elsewhere within defendant Town of Ross. Defendant's asserted justification for the continuance of the present zoning of plaintiff's property, to-wit, that the same is necessary to promote or preserve land values generally within the limits of defendant Town of Ross, is without substance and is predicated upon an unjustified fear of further inroads upon the residential nature of the Town of Ross without reasonable reference to the public health, safety and general welfare." The court also found that the property would have a value of from $65,000 to $66,750 if zoned for garden apartments as plaintiff proposes, but a "minimal or negative value" if used for single-family dwellings on lots smaller than one acre because the necessary flood control and site improvement expenditures would be greater than the value of the improved sites.

of the zoning authorities as to matters of opinion and policy will not be set aside or disregarded by the courts unless the regulations have no reasonable relation to the public welfare or unless the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power.'' (P. 461.) (See also *Wilkins* v. *City of San Bernardino* (1946) 29 Cal. 2d 332, 337 [175 P.2d 542]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 838 [323 P.2d 71].)

The uncontradicted physical facts show that the only one-acre parcels in the vicinity of plaintiff's property consist of the one lot directly across the boulevard, upon which stands a two-family dwelling, and the two one-acre lots further north, on the opposite side of the boulevard. Surrounding these lots there are irregularly-shaped parcels which vary in area from approximately 10,000 to 20,000 square feet. Upon them stand single-family dwellings. The land to the north of plaintiff's property, on the same side of the boulevard, similarly comprises lots of approximately 10,000 to 15,000 square feet, upon which single-family dwellings have been built. We would search in vain for single-family dwellings upon one-acre lots in other directions from the plaintiff's property; to the west we would find the commercial district and single-family dwellings upon 7,500 square foot lots, while to the south in Kentfield we would see only apartment houses. Nor does the record sustain a prognostication that the development of this area will be marked by consolidation of these separately-owned parcels or that the one-acre parcels occupied by a single one-family residence will some day become its dominant feature.

In reality we contemplate here an isolated area that has become an ''island'' of one-acre minimum lot size zoning in a residential ocean of substantially less restrictive zoning. As this court noted in *Reynolds* v. *Barrett* (1938) 12 Cal.2d 244 [83 P.2d 29], when passing upon the validity of a lot zoned for residential purposes which was surrounded by business properties and a school, the ''property is completely surrounded by non-residential property—one lot completely isolated from any adjoining residential property. It seems quite clear that as to this one lot the zoning ordinance is arbitrary and discriminatory. Obviously the property is valueless for a single family residence, and while that fact is not by itself conclusive, when it also appears that the property at no point is adjacent to residential property so that its use for business

purposes would not at all adversely affect residential property, the business use should be permitted. To hold otherwise would be to needlessly injure plaintiffs, without a compensating benefit to the public." (P. 250.)

The testimony of the expert witnesses for both parties indicated that the one-acre limitation bears no reasonable relation to the public welfare. The defendant's own planning expert, when questioned as to the justification for the one-acre limitation, stated that no public benefit would accrue from such limitation. On the basis of the expert testimony, the trial court found that "[T]he present zoning classification of plaintiff's property is not necessary to, and does not promote, the public health, safety or general welfare, and bears no reasonable reference thereto." Insofar as the present zoning classification restricts plaintiff's use of her property to a one-acre minimum lot size, we must hold it to be invalid.

Turning to the restriction as to single-family dwellings, however, we cannot say, applying the test of *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461, *supra,* that the decision of the zoning authorities bears "no reasonable relation to the public welfare" or that "the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power." Moroever, the zoning ordinance fulfills the further test of *Lockard* that "if the reasonableness of the ordinance is fairly debatable, the legislative determination will not be disturbed." (P. 462.) This latter test has, indeed, been expressed in an unbroken array of decisions from *Zahn* v. *Board of Public Works* (1925) 195 Cal. 497 [234 P. 388] through *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342]. (See particularly: *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 890 [264 P.2d 932]; *Wood* v. *City Planning Commission* (1955) 130 Cal.App.2d 356, 364 [279 P.2d 95]; *Safeway Stores, Inc.* v. *City Council of San Mateo* (1948) 86 Cal.App.2d 277, 285 [194 P.2d 720].)

As we have observed, the one-acre limitation in reality created an island of the one-acre lot size zoning; plaintiff, on the other hand, would have us create by judicial fiat an "island" of multiple-dwelling use in the midst of property which is zoned for, and occupied by, single-family dwellings. We cannot hold that the council's determination that the dominant characteristic of this area of single-family dwellings should

not be disturbed by the incursion of plaintiff's desired multiple dwellings is so arbitrary that it is not at least a fairly debatable issue.

The predominant characteristic of the property fronting on Sir Francis Drake Boulevard in Ross is that of single-family dwellings. As we shall point out, this characteristic has not been altered by the variant factors to which plaintiff alludes: the two dwellings which are not devoted to single-family use, the Ross General Hospital, the commercial district, and the multiple dwellings in Kentfield.

The two dwellings which front on the boulevard in the vicinity of plaintiff's property and which are not devoted to single-family use are relatively insignificant to the development of the area; their existence does not change the character of the surrounding property. As to Ross General Hospital, which lies across the boulevard from a part of her property, defendant's planning expert testified that such public service facilities frequently constitute permitted uses in residential areas; moreover, the hospital use existed *prior* to the time plaintiff purchased her property. Likewise, the use and frontage of the commercial district to the west of plaintiff's property is relatively remote and isolated from it; the town council could reasonably determine that the district did not appreciably alter the zoning characteristics of the property. The only substantial stand of multiple dwellings lies to the south of plaintiff's property across the town's boundary line in the unincorporated community of Kentfield.

The council could properly and reasonably draw the line of demarcation for single-family dwellings at the town boundary. ''Somewhere the line of demarcation must be drawn, and it is primarily the province of the municipal body to which the zoning function is committed to draw that line of demarcation, and it is neither the province nor the duty of courts to interfere with the discretion with which such bodies are invested in the absence of a clear showing of an abuse of that discretion.'' (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 495 [234 P. 381, 38 A.L.R. 1479].) Here the town council has drawn the boundaries of multiple-dwellings at the town line; plaintiff, in effect, would have us say that this line is arbitrary, and that the council must permit an enclave of apartment usage. The defendant's planning expert testified that if the town permitted multiple dwellings on the plaintiff's property it would be unable to deny similar requests from other landowners whose property fronts on Sir

Francis Drake Boulevard. Any such result would, of course, nullify the town's expressed determination strictly to preserve a single-family characteristic.

In short, the predominant hallmark of the land in Ross which surrounds plaintiff's property is the single-family dwelling. To protect the interests of the owners of these adjacent properties and prevent the incursion of apartment houses, the town council may properly restrict plaintiff's land to the erection of such single-family dwellings. As we have observed: "The entrance of one apartment house or flat into a district usually means the entrance of others, and while it may mean an enhancement of value of the adjacent property for the building of similar structures, it detracts from the value of neighboring property for home building. The man who is seeking to establish a permanent home would not deliberately choose to build next to an apartment house, and it is common experience that the man who has already built is dissatisfied with his home location and desires a change." (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 493 [234 P. 381, 38 A.L.R. 1479].) This observation finds expert corroboration in its application to the Town of Ross. As a planning consultant testified in the instant case, "[I]f this property were permitted to be zoned for apartments it would be rather difficult to prevent the properties across Sir Francis Drake Boulevard from going to the same classification. . . . I think that you would be opening a door there to a change in the character of the town by destroying its strong single family residential character . . . for a new type of development which apparently, up until now, has not been considered desirable in this town."

In this respect the instant situation resembles that of *Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, *supra*. There, too, the involved property lay in the single-family residential zone. The owner desired to change the residential zoning of his property to a classification for multiple dwellings; he demonstrated the existence of other multiple residential uses in the general area and of a business area immediately adjacent. In a fashion similar to Miss Hamer he argued that the property could profitably be used only for multiple-dwelling purposes and that the compelled single-family use destroyed its financial value. He too, like Miss Hamer, had twice unsuccessfully applied for rezoning. Plaintiff Wilkins likewise obtained favorable findings of fact in the trial court comparable to those of plaintiff here.

In an exhaustive opinion, this court, through Chief Justice Gibson, reversed the trial court, following the principle that if the determination of the legislative body were "fairly debatable" (p. 339) the court should not "substitute its judgment for that of the legislative body" (p. 339). The opinion pointed out that at the most plaintiff could only contend that adjoining property zoned for multiple-dwelling and commercial use formed an isolated area in a neighborhood devoted primarily to residential uses. Yet, said the court, "It is clearly within the discretion of the legislative body of that city to determine whether such an 'island' should be enlarged or not, and the mere fact that the owner may enjoy greater benefits, or that his property will be enhanced in value, if the size of the island is increased, cannot entitle him to compel the allowance of such increase in size. . . . Often there may be little difference in the character of the property on either side of the line, but such a showing will not justify a judicial alteration or extension of the boundaries. If an owner could compel the extension of the boundaries of the 'island,' by any such showing, then the next adjoining owner in turn could likewise make the same kind of a showing and obtain another extension of the 'island' to his property, and in a short time there would be an end to the effectiveness of all zoning legislation." (Pp. 341-342.)

Although plaintiff places great stress upon the New York case of *Dowsey* v. *Village of Kensington* (1931) 257 N.Y. 221 [177 N.E. 427, 86 A.L.R. 642] the situation there involved a unilateral restriction affecting the property on "Middle Neck road, the most active thoroughfare of that district." (P. 224.) The plaintiff's land, which was "at the edge of the village," fronted this "frequented highway." (P. 225.) "Except on the frontage of the village of Kensington, extending on one side of the road for one-fifth of a mile, all property on that road may be used" for apartments or business. (P. 230.) The case before us does not present a limitation on the property on one side of Sir Francis Drake Boulevard; single-family residences face the boulevard to the immediate north of plaintiff's property; the other side of the boulevard has not been zoned for apartments and businesses. We do not probe a problem of imbalance caused by divergent uses of a single thoroughfare where single-family dwellings must face an area on the opposite side zoned for apartments and business.

The arguments which plaintiff urges to invalidate the ordinance rest upon propositions which we shall show are not tenable. The first of these contentions suggests that the trial court's findings as to the detrimental effect of multiple dwellings should not be upset because they are based upon substantial evidence; the second urges that the ordinance invalidly renders plaintiff's property financially valueless; the third proposes that defendant cannot prevail because it failed to show that the sought multiple dwelling would cause any depreciation in the value of adjoining property.

As to the findings, we note initially that, although denominated findings of fact, they are in the nature of conclusions of law and thus subject to appellate review. ■ Moreover, as we have stated, "[T]he findings and conclusions of the trial court as to the reasonableness of a zoning ordinance are not binding on an appellate court if the record shows that the question is debatable and that there may be a difference of opinion on the subject." (*Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 839 [323 P.2d 71]; *Lockard* v. *City of Los Angeles* (1949), *supra*, 33 Cal.2d 453, 462.) The necessity for such review of findings of the trial court inheres in the judicial review accorded zoning enactments; the courts must look, not to the experts' opinion as to the most desirable zoning, but for the presence of any rational support for the legislative determination.

■ Plaintiff's argument as to the severe financial hardship inflicted by the ordinance cannot overcome the cases or the particular facts before us. We have said "The fact that plaintiffs may suffer some financial detriment does not require invalidation of the zoning restriction, for 'every exercise of the police power is apt to affect adversely the property interest of somebody.' (*Zahn* v. *Board of Public Works*, 195 Cal. 497, 512 [234 P. 388])." (*McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 890 [264 P.2d 932].) Applying this principle in *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342], this court upheld an ordinance limiting the subject property to agricultural and residential use, even though it possessed great value for rock, sand and gravel excavation but "no appreciable economic value" for any other purpose.

Moreover, plaintiff has been using her land, and presumably will continue to do so, for her own residence, which

occupies a portion of her property. She can thus contend only that defendant's position would render the remaining portion valueless. The trial court found that this remaining property could not profitably be developed for single-family dwellings because the costs of flood control and other site improvements would be greater than the value of the improved lots. Viewed in this perspective, plaintiff's contention is that the topography of her land should enable her to place structures upon her property which her neighbors could not put upon their property. A right accorded to plaintiff to construct multiple dwellings upon her property would result in her foisting upon her neighbors the detriment of the loss of a one-family dwelling area in order to relieve her from disadvantages inherent in the composition of her land. Yet she purchased her property with full knowledge of its topography.

Finally, we cannot accept plaintiff's argument that defendant must fail because it did not show that the erection of a multiple dwelling upon plaintiff's property would work a specific depreciating effect upon the property values of the neighborhood. The courts do not require proof of specificity of injury to the municipality or to those in the area of the involved property. Thus in *Wilkins* the court said, "The fact that there is no showing by the city that any harm would result to the zoning plan does not render a denial of the extension unreasonable." (P. 343.) *Town of Atherton* v. *Templeton* (1961) 198 Cal.App.2d 146 [17 Cal.Rptr. 680], discussing the injurious effect in general of a violation of a setback ordinance quoted *Acker* v. *Baldwin* (1941) 18 Cal.2d 341 [115 P.2d 455]: "Courts do not require that the proscribed use of each individual lot in an area zoned will have this effect if the zoning plan, as a whole, promotes these objectives of the police power." (P. 153.)

We conclude that the council's refusal to permit an inconsistent use which would tend to destroy the predominant one-family character of the property in plaintiff's general area, and the resulting application of the ordinance to plaintiff's property is not so arbitrary as to render the issue not fairly debatable.

Plaintiff contends, however, that the one-acre minimum lot size restriction in the ordinance cannot be severed from the balance of the ordinance; that, having determined that the one-acre limitation could not validly be applied to plaintiff's property, we must leave the property unzoned. Al-

though plaintiff relies for this position upon *National Brick Co.* v. *County of Lake* (1958) 9 Ill.2d 191 [137 N.E.2d 494] we note that the Illinois Supreme Court, in a recent closely reasoned opinion by Mr. Justice Schaefer, reexamined the consequences resulting from a decree which left the property unzoned and rejected the position which that court earlier espoused in *National Brick*. (*Sinclair Pipe Line Co.* v. *Village of Richton Park* (1960) 19 Ill.2d 370 [167 N.E.2d 406].) We accept the reasoning of the later case.

As we shall hereinafter explain in greater detail, the single-family dwelling and one-acre requirements do not so intimately enmesh that the one cannot be applied without the other. Accordingly, as we shall likewise point out, the trial court will be able to frame a judgment which will allow the plaintiff to make the maximum use of her property consistent with the right of the municipality to impose zoning restrictions upon the plaintiff's property.

█ As to the severability of invalid legislation, this court stated the general rule in *People* v. *Lewis* (1939) 13 Cal.2d 280, 284 [89 P.2d 388], quoting 5 California Jurisprudence 643, 644: " '. . . The accepted doctrine . . . is that the constitutional portions of the statute may stand alone and remain in force if they can be separated from the portions which are void. █ The unconstitutional provisions will not vitiate the whole act, unless they enter so entirely into the scope and design of the law, that it would be impossible to maintain it without such obnoxious provisions.' . . ." (*Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 555 [171 P.2d 885]; *People's etc. Loan Assn.* v. *State Franchise Tax Board* (1952) 110 Cal.App.2d 696, 701 [243 P.2d 902]; 3 Witkin, Summary of Cal. Law (7th ed. 1960) Constitutional Law, § 34, p. 1822.) Similar considerations govern situations which, as the instant one, present portions of legislation which are valid on their face but invalidly applied.

█ In the presence of the severability provision in the Ross Municipal Code our question pivots upon whether the invalid provision enters so entirely into the scope and design of the ordinances that it is impossible to apply them without that provision. The zoning ordinances impose, *inter alia,* two types of restrictions; one upon the type of structure which the owner may erect upon his land, the other upon the minimum size lot required for that use. These two provisions frame regulations of a different nature designed for the

satisfaction of different ends. The single-family dwelling restriction insures a homogeneous development of the neighborhood so that the quiet of the home will not be disturbed by the relative confusion and bustle of apartment buildings or the greater activity connected with commercial or manufacturing establishments. The minimum lot-size requirement, while it promotes homogeneous development of the neighborhood, also tends to insure adequate light and air and relieve congestion. Many zoning codes impose minimum lot restrictions, or achieve equivalent results through the imposition of setback requirements, or use both techniques, as to apartment, commercial and manufacturing developments.

Furthermore, contrary to the plaintiff's contention, the preamble to the 1946 ordinance, which first imposed minimum lot-size restrictions in Ross, does not indicate the inseparability of the one-acre lot-size limitation and the single-family dwelling requirement; the preamble merely recites the town's reasons for imposing an additoinal type of regulation beyond that contained in the earlier single-family use restriction. These are ''to insure proper space for fire control, health, ventilation, adequate air space and recreation.''

Common sense tells us that single-family homes may be erected upon lots of less than one acre: no immutable tie binds the single dwelling to a whole acre. Indeed, the Town of Ross at first enacted the restriction as to the single-family use and then years later placed in effect the lot-size restrictions. While the town did reenact the whole zoning scheme at one time, we see no indication that it would have intended the demise of the use restriction in the event of the invalidity of the size restriction. Neither the language of the ordinances nor the inherent nature of the restriction compel so drastic and, in the instant situation, so debilitating, a union.

The trial court, as we have said, may properly frame a judgment which will recognize the plaintiff's right to construct single-family dwellings upon lot sizes which both accord with the municipality's zoning purposes and do not unfairly discriminate against plaintiff's property. We have noted that the majority of the parcels in the vicinity of plaintiff's property contain from 10,000 to 20,000 square feet, and we perceive no reason why the plaintiff's property cannot be subject to the lesser restriction. Accordingly, the trial court can frame a judgment which will declare the one-acre restriction invalid but which will permit the defendant to impose upon the plaintiff's property a minimum lot-size clas-

sification which subjects the plaintiff's property to no greater restrictions than these neighboring parcels; that is, 10,000 square feet. By this allocation of the property to the appropriate classification of lot-size limitation we do not destroy the zoning ordinances by severance of the provisions for acreage and dwelling purposes but properly retain the whole of the scheme of the town as to both such objectives.

We dispose of other barriers to plaintiff's use of her property for the construction of several single-family dwellings in similar manner. Plaintiff introduced evidence at the trial which tended to show that because of the shape and topography of her property, the construction of several dwelling units would require variances, amendments or exceptions to the subdivision, yard area, setback and access restrictions in the town's ordinances. Plaintiff argued that these restrictions were unjust, oppressive and unreasonable as applied to her property. In accordance with this showing the findings of the trial court point out that "the development of plaintiff's property [for several single-family dwellings] would require variances, amendments or exceptions from the existing zoning and subdivision ordinances. . . ."

Implicit in our ruling is plaintiff's right to construct several single-family dwellings and to the necessary variances, amendments or exceptions from the existing zoning and subdivision ordinances to permit the building of such residences. We see no reason for the imposition of impeding restrictions upon such single-family use; the Town of Ross has urged none to us, and its planning expert testified that plaintiff's property presented a proper case for the removal of these restrictions. At plaintiff's application, the trial court may incorporate into the judgment a declaration of plaintiff's rights to such variances, amendments or exceptions from the existing zoning and subdivision ordinances as are reasonably necessary to permit the development and erection upon plaintiff's property of single-family residences on lot sizes not more restrictive than 10,000 square feet.

We note in conclusion that the tremendous growth of population and the consequent need for living areas inevitably call for land-use planning and for zoning regulations. The problems engendered by the explosion of the population lends new importance to the accepted rule that the municipalities, through their legislative bodies, should be permitted to establish zoning controls without judicial interference except in

the case of arbitrary action, oppression or confiscation. (See Baum, Zoning and Planning Controls, California Land Security and Development (1960) p. 600.) Necessarily the imposition of controls which seek the allocation of total areas for certain uses will work financial hardship upon individual property holders. But the financial loss to one cannot become the social loss to all. The debatable issue of the use of land, which must be solved by the legislative body, should not be transferred to the courts because an individual, without such control, could turn the property to greater profit.

The judgment is reversed for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.