[Civ. No. 35934. First Dist., Div. One. Sept. 22, 1975.]

THE PEOPLE ex rel. EVELLE J. YOUNGER,
as Attorney General, etc., et al., Plaintiffs and Appellants, v.
F. E. CRITES, INC., Defendant and Respondent.

THE PEOPLE ex rel. SAN FRANCISCO BAY CONSERVATION
AND DEVELOPMENT COMMISSION, Plaintiff and Appellant, v.
F. E. CRITES, INC., Defendant and Respondent.

■■■■■■■■■■■

## COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston, E. Clement Shute, Gregory K. Wilkinson, and Alexander Henson, Deputy Attorneys General, for Plaintiffs and Appellants.

Tinning & DeLap and Jay P. Sanders for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—The McAteer-Petris Act, codified as sections 66600-66661, inclusive, of the Government Code, creates the San Francisco Bay Conservation and Development Commission which is commonly, and will hereafter be, described as "BCDC." Sections 66604 and 66632 provide that any person "wishing to place fill, to extract materials, or to make any substantial change in use of any water, land or structure, within the area of the commission's jurisdiction shall secure a permit from the commission . . . ." Violation of the statute is a misdemeanor (§ 66632, subd. (a)), and violators are subject to a penalty of not to exceed $6,000 for each day of the violation (§ 66641). The commission is authorized to "Sue and be sued in all actions and proceedings and in all courts and tribunals of competent jurisdiction, including prohibitory and mandatory injunctions to restrain violations of [the McAteer-Petris Act]." (§ 66633, subd. (d).)

The Porter-Cologne Water Quality Control Act (Wat. Code, §§ 13020-13983, inclusive) establishes regional water quality control boards, one of which boards is for the San Francisco Bay region (§§ 13200, 13201). Section 13260 provides that: "Any person discharging waste or proposing to discharge waste within any region that could affect the quality of the waters of the state . . . shall file with the regional board of that region a report of the discharge, containing such information as may be required by the board." Section 13263 states: "The regional board . . . shall prescribe requirements as to the nature of any proposed discharge, existing discharge, or material change therein, . . ." "Any person failing to furnish a report under Section 13260 when so requested by a regional board is guilty of a misdemeanor." (§ 13261.) And: "The Attorney General, at the request of the regional board, shall petition the superior·

■■■■■

court for the issuance of a temporary restraining order, temporary injunction, or permanent injunction, or combination thereof, as may be appropriate, requiring any person not complying with Section 13260 to comply therewith." (§ 13262.)

Defendant and respondent F. E. Crites, Inc. (hereafter sometimes "Crites") was engaged in the hydraulic dredging of sand and mud from the bottom of Suisun Bay, an arm of San Francisco Bay, and depositing it behind dikes and weirs on highland property of the United States Navy. Muddy and otherwise polluted water was then permitted to flow back, through the weirs, into the bay. Crites had obtained a BCDC permit limiting the dredging to 80,000 cubic yards a year, with the work to be performed at the same location. The corporation had also filed a report with the California Regional Water Quality Control Board, San Francisco Bay region (hereafter "Water Quality Control Board"), as required by Water Code section 13260. One of the Water Quality Control Board's discharge requirements obliged Crites "to file a report on waste discharge at least one hundred and twenty days before making any material change or proposed change in the character, location or volume of the discharge." Thereafter, without a BCDC permit therefor, and without further report to the Water Quality Control Board, Crites increased the quantity of its dredging (or "sales") to 179,351 cubic yards in 1972, and 285,384 cubic yards in 1973.

In late 1973, having purchased some bay shore property a half mile distant from the site of the dredging and waste discharge operations we have discussed, Crites transferred its operations to the new location. Its plans were to continue dredging between 150,000 and 200,000 cubic yards each year. No BCDC permit was sought or granted for the new operations; nor did Crites there comply with the water quality control, and waste discharge requirements of the Porter-Cologne Water Quality Control Act.

Following Crites' commencement of dredging and waste discharge at the new location, the Attorney General, at the request of BCDC and the Water Quality Control Board, commenced actions which were later consolidated, in the name of the People to enjoin further such operations.

Following appropriate proceedings for a preliminary injunction, the superior court found noncompliance by Crites with both the McAteer-

Petris Act and the Porter-Cologne Water Quality Control Act. Those findings appear to be supported by uncontradicted evidence; at least they are supported by substantial evidence (see *Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805]), indeed by the great weight of the evidence. No contention is made to the contrary.

The superior court then made and filed its "Order Granting Preliminary Injunction," by which Crites was permitted to continue his current dredging and waste discharge operations at the rate of 80,000 cubic yards per year, "pending timely action on an application by defendant for a permit from the San Francisco Bay Conservation and Development Commission, timely action by the Regional Water Quality Control Board, San Francisco Bay Region, on defendant's application for waste discharge requirements and pending further order of this Court." The plaintiff, People of the State of California, has appealed from this order. Such an order is appealable. (Code Civ. Proc., § 904.1, subd. (f); *Brydon v. City of Hermosa Beach,* 93 Cal.App. 615, 620 [270 P. 255].)

■ The People first contend that it was beyond the power of the superior court to permit Crites to continue any part of its dredging and waste discharge operations. We find ourselves in agreement, and for the following reasons.

The preliminary injunction at issue had the effect of permitting Crites to continue its operations in violation of law. And it prevented BCDC and the Water Quality Control Board from performing their duties as directed by statute.

Civil Code section 3423 provides:

"An injunction cannot be granted: . . . Fourth—To prevent the execution of a public statute, by officers of the law, for the public benefit. . . . Sixth—To prevent the exercise of a public . . . office, in a lawful manner, by the person in possession."

To the same effect see Code of Civil Procedure section 526.

These statutes have been interpreted and applied by reviewing courts of this state.

In *People* v. *Superior Court (Witzerman)*, 248 Cal.App.2d 276 [56 Cal.Rptr. 393], the superior court had limited the right of government officials to engage in discovery which was permitted them by law, in an action to enjoin violation of the state's corporate security laws. The appellate court, in issuing a peremptory writ of prohibition, declared (p. 282): "Apart from the absence of any showing of good cause, the protective order appears on its face to be in excess of the jurisdiction of the court. [Citation of Code Civ. Proc., § 526, and Civ. Code, § 3423.] The order here under review is directed both to the Commissioner of Corporations and to the Attorney General, both of whom are public officers. Where, as here, the validity of the laws under which they are acting is beyond question and their powers are plain, the jurisdiction of a court to issue an injunction is limited by these sections. (*State Board of Equalization* v. *Superior Court*, 5 Cal.App.2d 374, 378 [42 P.2d 1076]; *Financial Indem. Co.* v. *Superior Court*, 45 Cal.2d 395 [289 P.2d 233].) As the court said in *Financial Indemnity Co.*, at page 402, quoting from *Southern Oregon Co.* v. *Quine*, 70 Ore. 63 [139 P. 332]: ' "We think the law is fixed, beyond cavil, that courts of equity have no power by injunction to restrain a public officer from performing an official act that he is required by valid law to perform. It is not sufficient to clothe the court with jurisdiction to say simply that, unless the court extends its restraining hand, hardships will follow, or irreparable damage will ensue, because the officer delegated to execute such law may act unwisely or injuriously to the party seeking relief. The acts must be such as are without the sanction of a sound law." ' "

In *Downing* v. *Cal. State Board of Pharmacy*, 85 Cal.App.2d 30 [192 P.2d 39], health officials had been restrained from requiring statutory compliance by certain drug manufacturers and suppliers. This court reversed, stating (p. 36): "The statute requires a drug to be labeled properly and prohibits the sale or giving away of a drug unless the statute has been complied with. The injunction here, in legal effect, permitted and authorized a limited violation of those statutes. The trial court has no power to permit even the limited violation of a criminal statute. [¶] Plaintiffs argue that the execution of a constitutional statute sought to be unconstitutionally applied may be prevented by injunction. It was so held in *Brock* v. *Superior Court*, 12 Cal.2d 605 [86 P.2d 805]. This court does not dispute the correctness of that rule. If law enforcement officers attempt to enforce a criminal statute arbitrarily and in a discriminatory manner, such action may be restrained by the courts. But that is not this case."

Similar conclusions were reached in *Richardson* v. *Superior Court,* 138 Cal.App. 389, 394-395 [32 P.2d 405], wherein the court held: "While it thus appears that the authority of the commissioner over the property and business affairs of the association when in his custody is subject to certain prescribed judicial review and control, the principal characteristics of his position as administrator are those of a public officer charged with a statutory duty which, for reasons of public policy, has been made to include a trust in private property. The statute constitutes a declaration of policy by the state to the effect that the protection of investments in building and loan associations is a special subject of care by the state, and that the measures prescribed in the statute are necessary measures in relation to the welfare of the public. . . . [¶] So here, the statutes to which we have referred do not limit the equity jurisdiction of the court, but they do operate on the parties plaintiff (and interveners), in the court below, so as to deprive them of the right to have a receiver substituted for the commissioner."

And to the same effect see *Financial Indem. Co.* v. *Superior Court,* 45 Cal.2d 395, 402 [289 P.2d 233].

These authorities demonstrate the invalidity of the complained of feature of the preliminary injunction of the case before us.

■ We consider also the remaining contention of the People that the superior court improperly considered the claim of Crites' economic "hardship."

The record establishes conclusively that during the first of Crites' dredging and waste discharge operations, it had knowingly violated the requirements of the McAteer-Petris Act and Porter-Cologne Water Quality Control Act. It also indicates, uncontrovertibly, that at the new location the company wilfully failed to observe the demands of those statutes.

The applicable rule will be distilled from the following authoritative quotations.

*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 342 [175 P.2d 542]: "[M]any of the alleged hardships of which [the plaintiff] complains are admittedly the result of his own actions in violating the duly enacted ordinances of the city. 'No one can take advantage of his own wrong'

(Civ. Code, § 3517), and plaintiff should not be permitted to benefit from his own wrongdoing. . . . [T]he court must wholly ignore all conditions which resulted from the plaintiff's actions. If this were not so, then any landowner could violate a zoning ordinance with impunity, secure in the knowledge that, by just going far enough, by devoting his land to unrestricted uses, and by creating a situation in which enforcement would result in hardship to him, he could obtain a judgment that the ordinance is unconstitutional as applied to the *then existing* circumstances as changed by his actions. . . . [¶] In this case, it appears that the trial court was improperly influenced by the conditions which resulted from plaintiff's actions in disregard of the ordinance."

*Keith* v. *Superior Court,* 26 Cal.App.3d 521, 524-525 [103 Cal.Rptr. 314]: "So far as appears from the record before the court the threatened trespass will not be innocent. [Citations.] [¶] Defendant has simply decided it wants to go ahead with its proposed subdivision even though it involves taking plaintiffs' property. The inconvenience and expense which defendant might suffer by the frustration of that purpose are not 'equities' which the trial court should have weighed. [¶] Under the circumstances of this case the trial court's decision to 'weigh the equities' deprived plaintiff of a proper hearing on his application for a preliminary injunction."

*Town of Atherton* v. *Templeton,* 198 Cal.App.2d 146, 154 [17 Cal.Rptr. 680]: "The rule is well established that self-induced hardship affords no grounds for attack on an enactment or regulation. (55 Cal.Jur.2d, § 77, pp. 669-670.)"

*Morgan* v. *Veach,* 59 Cal.App.2d 682, 690 [139 P.2d 976]: " 'But relief by way of a mandatory injunction will not be denied on the ground that the loss caused by it will be disproportionate to the good accomplished, where it appears that the defendant acted with a full knowledge of the complainant's rights and with an understanding of the consequences which might ensue. . . .' "

It will be seen that the People's second contention also, is valid.

The order granting preliminary injunction is reversed insofar as it permits the defendant F. E. Crites, Inc. to "hydraulically dredge up to

80,000 cubic yards of [or any] sand"; in all other respects it is affirmed. The People will recover their costs of appeal.

Molinari, P. J., and Sims, J., concurred.